**SARRAF GENTILE LLP**
**Ronen Sarraf (RS-7694)**
**Joseph Gentile**
**485 Seventh Avenue, Suite 1005**
**New York, NY 10018**
**Tel: 212-868-3610**
**Fax: 212-918-7967**

***(Proposed Co-Lead Counsel for proposed Lead Plaintiff, Additional Proposed Co-Lead Counsel Appear on Signature Page)***

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL J. LAROSA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE<br><br>Defendants. | CASE NO. 06-cv-06349-NRB |
| MOTTI KAPLAN, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE<br><br>Defendants. | CASE NO. 06-cv-06128-NRB |

| | |
|---|---|
| SANTIAGO GUZMAN, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-06235 |
| ERIC S. BERGEN, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-06313 |
| ROBERT FEENY, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-06449 |

| | |
|---|---|
| FLOYD REYNOLDS, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-06693 |
| ANTHONY CAIAFA, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE and KATHRYN A. GAMBLE | CASE NO. 06-cv-07057 |
| ROBERT B, GRAY, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-07162 |

**NOTICE OF MOTION AND MOTION FOR CONSOLIDATION, APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL**

PLEASE TAKE NOTICE THAT Plaintiff Michael J. Larosa ("Plaintiff") and proposed lead plaintiff Jay M. Spritzler ("Spritzler") (collectively, "Movants") respectfully move for an order, pursuant to Fed. R. Civ. P. 42(a) consolidating the above-captioned actions, and, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §

78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): (i) appointing Spritzler as Lead Plaintiff of the class of purchasers of the securities of Imax Corporation ("IMAX" or the "Company"), and (ii) approving Spritzler's selection of Chimicles & Tikellis LLP and Sarraf Gentile LLP as Co-Lead Counsel.

The grounds for this motion are set forth in the accompanying memorandum of law and the Declaration of Ronen Sarraf, with exhibits submitted herewith. A [Proposed] Order is also attached.

Dated: October 10, 2006


**SARRAF GENTILE LLP**

/s/ Ronen Sarraf
Ronen Sarraf (RS-7694)
Joseph Gentile
485 Seventh Avenue, Suite 1005
New York, NY 10018
Tel: 212-868-3610
Fax: 212-918-7967

Kimberly M. Donaldson
Timothy N. Mathews
**CHIMICLES & TIKELLIS LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Tel: (610) 642-8500
Fax: (610) 649-3633


**Attorneys for Plaintiff Larosa and Spritzler, and Proposed Co-Lead Counsel for the Class**

**SARRAF GENTILE LLP**
**Ronen Sarraf (RS-7694)**
**Joseph Gentile**
**485 Seventh Avenue, Suite 1005**
**New York, NY 10018**
**Tel: 212-868-3610**
**Fax: 212-918-7967**

***(Proposed Co-Lead Counsel for proposed Lead Plaintiff, Additional Proposed Co-Lead Counsel Appear on Signature Page)***

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL J. LAROSA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE<br><br>Defendants. | CASE NO. 06-cv-06349-NRB |
| MOTTI KAPLAN, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE<br><br>Defendants. | CASE NO. 06-cv-06128-NRB |

| | |
|---|---|
| SANTIAGO GUZMAN, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-06235 |
| ERIC S. BERGEN, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-06313 |
| ROBERT FEENY, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-06449 |

| | |
|---|---|
| FLOYD REYNOLDS, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-06693 |
| ANTHONY CAIAFA, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE and KATHRYN A. GAMBLE | CASE NO. 06-cv-07057 |
| ROBERT B, GRAY, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-07162 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR CONSOLIDATION, APPOINTMENT OF**
**LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL**

Plaintiff Michael J. Larosa ("Plaintiff") and proposed lead plaintiff Jay M. Spritzler ("Spritzler") (collectively, "Movants") respectfully move for an order, pursuant to Fed. R. Civ. P. 42(a), consolidating the above-captioned actions, and, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): (i) appointing Spritzler as Lead Plaintiff of the class of purchasers of the securities of Imax Corporation ("IMAX" or the "Company"), and (ii) approving Spritzler's selection of Chimicles & Tikellis LLP and Sarraf Gentile LLP as Co-Lead Counsel. This memorandum and the accompanying Declaration of Ronen Sarraf are submitted in support of Movants' motion.

## FACTUAL ALLEGATIONS

**The Action**

On August 11, 2006, Plaintiff Motti Kaplan commenced an action on behalf of persons who purchased securities of IMAX from February 17, 2006 through August 9, 2006, inclusive (the "Class" and the "Class Period"),[1] seeking remedies under the Exchange Act. *See Motti v. IMAX Corporation, et al.*, 06-cv-06128-NRB (S.D.N.Y.). Subsequently, several actions have been filed in the Southern District of New York, including the Action filed by Plaintiff, *Larosa v. IMAX Corporation, et. al*, 06-cv-06349, on behalf of a substantially similar Class seeking substantially similar relief.

IMAX is a corporation registered under the laws of the Country of Canada, and is jointly headquartered in Canada and the United States (specifically, in New York, New York). IMAX was

1 On September 13, 2006, a related action was filed in this Court, *Caiafa v. IMAX Corporation, et al.*, 06-cv-07057, alleging that the class period started on October 28, 2004,

founded in 1967 and is one of the world's leading entertainment technology companies and, via its chain of 'high-tech' cinemas, is a distribution entity for movies made in the United States. As of June 30, 2006, IMAX has 274 IMAX theaters operating in 38 countries worldwide. IMAX is a publicly traded company listed on a Canadian stock exchange – the TSX – and the US stock exchange – the NASDAQ.

IMAX bills itself as one of the world's leading entertainment companies and its businesses include the creation and delivery of cinematic, large-format presentations, using proprietary IMAX® and IMAX® 3D technology, which IMAX refers to as 'The IMAX Experience." IMAX estimates the number of visitors to IMAX's theaters to number close to one billion since 1970. Towards at least the end of 2005, IMAX was undergoing financial upheaval. The Company announced disappointing quarterly financial results in November 2005, which negatively impacted the value of the Company's share price. Analysts attributed the poor financial results to the Company's inability to timely install its 'high-tech' cinema systems. In the third financial quarter of 2005, IMAX installed just seven new systems, four less than anticipated.

These class action lawsuits arise out of material omissions and false and misleading statements issued by IMAX, concerning, among other things, IMAX's failure to properly recognize revenue for at least three financial quarters prior to June 2006. The actions allege that defendants violated Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, by issuing a series of material misrepresentations to the market during the Class Period. From February through May 2006, the company issued press releases touting the Company's financial success, and indicated the Company's willingness to explore financial options. The complaints allege that IMAX

---

instead of February 17, 2006.

and its top executives knew during the Class Period that revenue was being improperly recognized, but failed to make the necessary adjustments, thus artificially inflating the price of IMAX's stock. The actions allege that to affect a sale or merger of IMAX, and to gain as high a price as possible for IMAX in such a transaction, it was critical that the value of IMAX was perceived to be high. Therefore, IMAX and some of its top executives sought to bolster the share price of the Company by strategically recognizing revenue when it most suited the Company, even when such revenue recognition policies violated accepted accounting principles.

On August 9, 2006, IMAX revealed that it was responding to an informal inquiry from the U.S. Securities and Exchange Commission ("SEC") regarding the Company's timing of revenue recognition. The SEC's inquiry was focused on IMAX's recognition of revenue in the fourth quarter of 2005 in 10 theaters not open during that quarter. Further, IMAX said that it had identified a "material weakness" related to revenue-recognition issues in its second-quarter financial report, leading to a reduction in revenue. The press release also stated the Company had yet to find an investor to effectuate a merger or purchase. In response to this announcement, the next day the price of the Company's common stock fell by 40.6%, or $3.91. This caused significant harm to Plaintiff and holders of IMAX's securities.

**<u>Proposed Lead Plaintiff</u>**

Plaintiff, who filed this action on behalf of himself and all others similarly situated, moves for the appointment of Spritzler, an investor who purchased IMAX common stock during the Class Period, as Lead Plaintiff. At various times during the Class Period, Spritzler made several purchases of IMAX common stock and, on the last day of the Class Period, Spritzler owned10,000 shares of IMAX stock. *See* Declaration of Ronen Sarraf filed concurrently herewith in support of Plaintiff's

Motion ("Sarraf Decl."), at Exhibit A, Spritzler PSLRA Certification. Subsequent to the end of the Class Period, Spritzler sold those 10,000 shares of IMAX stock. *Id.* Spritzler seeks to prosecute this action on behalf of himself and other members of the Class. *Id.* In this regard, Spritzler has agreed to monitor and supervise the efforts of class counsel, receive and review regular status reports from counsel concerning the action, and play an active role in the prosecution and, if applicable, resolution of the action. *Id.*

Spritzler also requests that the Court approve its selection of Co-Lead Counsel to prosecute this Action on behalf of the Class. Each of the proposed firms have significant expertise in the prosecution of securities class actions such as this, and, as in other similar cases they have litigated, will work to minimize costs and prosecute the action in an efficient and effective manner.

## **ARGUMENT**

### A. THE ACTIONS SHOULD BE CONSOLIDATED BECAUSE THEY SHARE SIMILAR QUESTIONS OF LAW AND FACT

Rule 42(a) of the Federal Rules of Civil Procedure provides: "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." A court has broad discretion to consolidate cases pending within its district. *See, e.g., Dolan v. Axis Capital Holdings Ltd.,* Nos. 04 Civ. 8564, 04 Civ. 8810, 2005 WL 883008, at *2 (S.D.N.Y. Apr.13, 2005) (consolidating cases where one case asserted claims against additional defendant and claims "overlapp[ed]"); *In re Olsten Corp. Sec. Litig.,* 3 F.Supp.2d 286, 292-93 (E.D.N.Y.1998) (consolidating cases alleging different class periods and slightly different facts;

"the facts and legal issues need not be identical to warrant consolidation"), *opinion adhered to on reconsideration,* 181 F.R.D. 218 (E.D.N.Y.1998).

The above-captioned actions all involve class action claims brought on behalf of purchasers of IMAX common stock during the Class Period. Each of the actions assert similar claims, involving the same underlying facts and relying on the same theories of liability, such that consolidation into a single action is appropriate. Accordingly, the above-captioned actions should be consolidated under Rule 42(a).

## B. SPRITZLER SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS IN THE CONSOLIDATED ACTION

### *1. The Procedure Mandated by the PSLRA For Appointment of Lead Plaintiffs*

The PSLRA sets forth the procedure governing the appointment of a Lead Plaintiff in each private action arising under the Exchange Act that is brought as a plaintiff class action under the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(1). Under the first step, a plaintiff who files a putative class action must publish a notice advising members of the purported plaintiff class of the pendency of the action, the claims asserted therein, the purported class period, and the option of any member of the purported class to move to serve as lead plaintiff of the purported class not later than 60 days after the date on which the notice is published. *See* 15 U.S.C. § 78u-4(a)(3)(A).

Under the PSLRA, the Court is then required to appoint as lead plaintiff the "most adequate plaintiff," which is defined as "the member or members of the purported plaintiff class that the Court determines to be most capable of adequately representing the interests of class members." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA further provides:

> . . . the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this subchapter is the person or group of persons that-

(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).[2] *See e.g., Pirelli Armstrong Tire Corp. v. LaBranche & Co.,* 229 F.R.D. 395, 419-20 (S.D.N.Y.2004); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.,* No. 00 Civ. 152, 2000 WL 486956, at *3 (D.N.J. Apr.24, 2000); *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 45-46 (S.D.N.Y.1998). As set forth below, Spritzler is the "most adequate plaintiff."

***2. Spritzler Satisfies the Lead Plaintiff Requirements of the PSLRA.***

A. The Notice Requirements Have Been Satisfied.

On August 11, 2006 counsel in *Motti v. IMAX Corporation, et al.*, 06-cv-06128-NRB (S.D.N.Y.) published a notice that advised IMAX's stockholders of (i) the pendency of a securities class action against defendants, (ii) the claims asserted, (iii) the purported Class in that litigation, and (iv) the right of any member of the purported Class to move the Court to serve as lead plaintiff within the sixty-day period. On August 22, 2006, counsel for Movants, Chimicles

---

2 The PSLRA provides that the:

> presumption [that the claimant with the largest interest should be lead plaintiff] may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--
>
> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

& Tikellis LLP, published a similar notice. Accordingly, the notice requirements set forth in 15 U.S.C. §§78u-4(a)(3)(A)(i)(I) and (II) have been satisfied. *See e.g., Pirelli Armstrong Tire Corp.,* 229 F.R.D. at 419-20; *Laborers Local 1298 Pension Fund,* No. 00 Civ. 152, 2000 WL 486956, at *3; *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. at 45-46.

B. Spritzler Has the Largest Financial Interest.

The PSLRA expressly permits an individual to serve as a lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(stating that lead plaintiff may be a "a person or group of persons"). At the time of this filing, no other plaintiffs have sought to be appointed as Lead Plaintiff and thus Spritzler appears to have "the largest financial interest in the relief sought by the class" within the meaning of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Three factors are relevant to determine which applicant for lead plaintiff has the greatest financial interest: the number of shares purchased, the amount expended, and the amount lost. *See e.g., Pirelli Armstrong Tire Corp.,* 229 F.R.D. at 419-20; *Laborers Local 1298 Pension Fund,* No. 00 Civ. 152, 2000 WL 486956, at *3; *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. at 45-46. As set forth in Spritzler's certification (Exhibit A to Sarraf Decl.), over the course of the class period Spritzler purchased 15,000 shares for $142,598.41. *Id.* During the Class Period, Spritzler sold 5,000 of those shares for a gain of $613.59, and after the last day of the Class Period, sold the remaining 10,000 shares for a loss of $39,340. Thus, for purchases of IMAX common stock made during the Class Period, Spritzler had an actual loss of approximately $38,700. (Sarraf Decl., Ex. A).

---

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

C. Spritzler Has Satisfied the Other PSLRA Requirements.

Spritzler has satisfied each of the other requirements of the PSLRA. First, Spritzler has signed a Certification, which:

(i) states that he has reviewed the Complaint and he authorizes the filing of the instant papers on his behalf;

(ii) states that he did not purchase his stocks at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws;

(iii) states that his is willing to serve as a representative party on behalf of a Class, including providing testimony at deposition and trial, if necessary;

(iii) sets forth all of his transactions in IMAX common stock during the Class Period;

(iv) identifies any other action or action filed within the past three years, in which he has sought to act as a representative party on behalf of a class in any private federal securities action; and

(vi) states that he will not accept any payment for serving as a representative party on behalf of the Class beyond his pro rata share of any recovery.

*See* 15 U.S.C. § 78u-4(a)(2)(A); Exhibit A, Sarraf Decl. Second, Spritzler also satisfied the PSLRA by moving for appointment as Lead Plaintiff within sixty days after the date on which the Notice was published. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Third, Spritzler satisfies the applicable requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) is satisfied for the purposes of this motion where (i) the claims of the proposed lead plaintiff are typical of the claims of the class and (ii) the proposed lead plaintiff will fairly and adequately protect the interests of the class.[3] *See e.g.,*

3 Although there are two other requirements under Fed. R. Civ. P. 23(a), numerosity and commonality, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Cendant Corp. Litig.*, 264 F.3d at 263-64.

*Pirelli Armstrong Tire Corp.,* 229 F.R.D. at 419-20; *Laborers Local 1298 Pension Fund,* No. 00 Civ. 152, 2000 WL 486956, at *3; *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. at 45-46.

Under Rule 23(a)(3), the typicality requirement is satisfied where the claims of the proposed class representative arise from the same course of conduct that gives rise to the other class members' claims, where these claims are based on the same legal theory, and where the class members and proposed class representatives were injured by the same conduct. The adequacy requirement of Rule 23(a)(4) is satisfied when the proposed class representatives do not have interests antagonistic to the proposed class, and where the proposed class representatives have retained experienced and capable counsel. *See, e.g., Pirelli Armstrong Tire Corp.,* 229 F.R.D. at 419-20; *Laborers Local 1298 Pension Fund,* No. 00 Civ. 152, 2000 WL 486956, at *3; *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. at 45-46.

In this action, Spritzler's claims are typical of those claims belonging to all Class members. They have been harmed by Defendants' allegedly false and misleading statements, as all Class members were. Further, Spritzler's interests are clearly aligned with those of the members of the Class, and there is no evidence of any antagonism between their interests and those of the Class. An examination of the pleadings filed in these actions and the purchase data submitted by Spritzler demonstrates that his claims are typical of the claims of the Class within the meaning of Rule 23(a)(3) and that they will fairly and adequately represent the interests of the Class under Rule 23(a)(4).

## II. THE COURT SHOULD APPROVE SPRITZLER'S CHOICE OF LEAD COUNSEL

The PSLRA expressly provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should not disturb a proposed lead plaintiff's choice unless "necessary to protect the interests of the plaintiff class." *See* Statement of Managers -- "The Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H13691-08, at H13700 (daily edition Nov. 28, 1995).

Pursuant to Section 21D(a)(3)(B)(v) of the Exchange Act, a movant shall, subject to the approval of the Court, select and retain lead counsel to represent the Class. Spritzler has selected and retained Chimicles & Tikellis LLP and Sarraf Gentile LLP as Co-Lead Counsel in this case. A biography of each firm and its personnel has been submitted as Exhibits B & C to the Sarraf Decl.

Chimicles & Tikellis LLP has significant relevant experience prosecuting securities class actions on behalf of defrauded investors: Chimicles & Tikellis LLP as Lead Trial Counsel in *In Re Real Estate Associates Limited Partnerships Litig.*, No. CV 98-7035 DDP (C.D. Cal.), generated a $185 million jury verdict (a top 10 verdict in the U.S. in 2002) in this landmark case that was the first securities law class action tried to a jury, and for which a plaintiffs' jury verdict awarding substantial damages was the first secured anywhere in the United States since the enactment of the PSLRA. Most recently, Chimicles & Tikellis LLP served as Lead Litigation Counsel representing a class of stockholders who invested in CNL Hotels & Resorts, Inc., the nation's largest hotel real estate investment trust based in Orlando, Florida, in a class action case against CNL and various of its affiliates, concerning alleged violations of federal securities laws and state common law. *CNL Hotels & Resorts, Inc.*, Case No. 6:04-cv-1231-Orl-31KRS (U.S.D.C. M.D. Fla.) ("CNL Action"). CNL had raised over $3 billion from investors pursuant to alleged false and misleading offering

materials ("Purchaser Claims"), and then, in June 2004, announced an affiliated-transaction that was set to cost the investors and the Company over $300 million ("Merger Claims"). On August 1, 2006, the Court approved the Settlement of the CNL Action: CNL Hotels had entered into a Revised Merger Agreement which significantly reduced the amount that it paid to acquire its affiliated Advisor, from $300 million to approximately $100 million, and the Purchaser Claims were settled for $35,000,000. In approving the settlement of the CNL Action, the court noted that "counsel pursued this complex case diligently, competently and professionally" and "achieved a successful result." *See also* Sarraf Decl., Ex. B, Firm Resume of Chimicles & Tikellis LLP.

In addition, the Sarraf Gentile firm has had a leading role in numerous actions filed on behalf of defrauded investors and is currently Co-Lead Counsel in several securities fraud actions filed nationwide, *In re Arbinet-thexchange, Inc. Sec. Litig.*, 05-cv-04444 (JLL) (D.N.J.), and in this District, *Schottenfeld v. Workstream Inc., et al.*, No. 05 Civ. 7092 (CLB) (S.D.N.Y.). *See* Sarraf Decl., Ex. C, Firm Resume of Sarraf Gentile LLP.

Proposed Co-Lead Counsel has evidenced their experience and efficiency by filing and serving a detailed complaint. These two firms have a history of working well together and are prepared to commit the necessary resources to prosecute this action and minimize duplication of cost and effort. All plaintiffs will receive quality legal representation that will efficiently and aggressively pursue this matter. The Court may be assured that the members of the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve Chimicles & Tikellis LLP and Sarraf Gentile LLP as Movants' choice of Co-Lead Counsel.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court consolidate the above-captioned actions, appoint Spritzler as Lead Plaintiff and approve Movants' selection of Co-Lead Counsel.

Dated: October 10, 2006

**SARRAF GENTILE LLP**


/s/ Ronen Sarraf
Ronen Sarraf (RS-7694)
Joseph Gentile
485 Seventh Avenue, Suite 1005
New York, NY 10018
Tel: 212-868-3610
Fax: 212-918-7967

Kimberly M. Donaldson
Timothy N. Mathews
**CHIMICLES & TIKELLIS LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Tel: (610) 642-8500
Fax: (610) 649-3633


**Attorneys for Plaintiff Larosa and Spritzler, and Proposed Co-Lead Counsel for the Class**

**SARRAF GENTILE LLP**
**Ronen Sarraf (RS-7694)**
**Joseph Gentile**
**485 Seventh Avenue, Suite 1005**
**New York, NY 10018**
**Tel: 212-868-3610**
**Fax: 212-918-7967**

***(Proposed Co-Lead Counsel for proposed Lead Plaintiff,***
***Additional Proposed Co-Lead Counsel Appear on Signature Page)***

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL J. LAROSA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE<br><br>Defendants. | CASE NO. 06-cv-06349-NRB |
| MOTTI KAPLAN, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE<br><br>Defendants. | CASE NO. 06-cv-06128-NRB |

| | |
|---|---|
| SANTIAGO GUZMAN, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-06235 |
| ERIC S. BERGEN, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-06313 |
| ROBERT FEENY, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-06449 |

| | |
|---|---|
| FLOYD REYNOLDS, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-06693 |
| ANTHONY CAIAFA, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE and KATHRYN A. GAMBLE | CASE NO. 06-cv-07057 |
| ROBERT B, GRAY, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-07162 |

**DECLARATION OF RONEN SARRAF IN SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL**

I am a member of the law firm Sarraf Gentile LLP, counsel to Plaintiffs Michael J. Larosa and proposed Lead Plaintiff Jay M. Spritzler ("Spritzler") (collectively, "Movants"). I submit this declaration in support of Movants' application for an order, pursuant to Fed. R. Civ. P. 42(a), consolidating the above-captioned actions, and, pursuant to Section 21D(a)(3) of the

Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): (i) appointing Spritzler as Lead Plaintiff of the class of purchasers of the securities of Imax Corporation ("IMAX" or the "Company"), and (ii) approving Spritzler's selection of Chimicles & Tikellis LLP and Sarraf Gentile LLP as Co-Lead Counsel.

Attached to this Declaration are true and correct copies of the following:

Exhibit A Certification of Jay M. Spritzler

Exhibit B Firm Resume of Chimicles & Tikellis LLP

Exhibit C Firm Resume of Sarraf Gentile LLP

I declare under penalty of perjury that the foregoing is true.

Dated: New York, New York
October 10, 2006

/s/ Ronen Sarraf
Ronen Sarraf

# EXHIBIT A

**CERTIFICATION OF NAMED PLAINTIFF**
**<u>PURSUANT TO FEDERAL SECURITIES LAWS</u>**

Jay M. Spritzler:

1. I have reviewed the complaint prepared and filed by counsel, Chimicles & Tikellis LLP, and have authorized the filing of the Motion seeking my appointment as Lead Plaintiff and my selection of counsel as Chimicles & Tikellis LLP.

2. I did not purchase or otherwise acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or other litigation arising under the federal securities laws.

3. I am willing to serve as a Lead Plaintiff and/or representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. My purchases and sales of IMAX Corporation securities between February 17, 2006 and August 9, 2006 are listed in Attachment A.

5. During the three years prior to the date of this Certification, I have not sought to serve nor have I served as a Lead Plaintiff or representative party on behalf of a class in an action filed under the federal securities laws.

6. I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of ~~September,~~ OCTOBER 2006.

Jay M. Spritzler
Jay M. Spritzler

# Jay M. Spritzler
# IMAX Securities Transactions

2422 Creek View Drive
Lancaster, PA 17602

| Symbol | Date | Quantity | Price | Bought | Sold |
|---|---|---|---|---|---|
| IMAX | 3/20/2006 | 2000 | $10.25 | | $20,500.00 |
| | | 1300 | $10.21 | | $13,273.00 |
| | | 306 | $10.21 | | $3,124.26 |
| | | 100 | $10.21 | | $1,021.00 |
| | | 100 | $10.21 | | $1,021.00 |
| | | 100 | $10.21 | | $1,021.00 |
| | | 94 | $10.21 | | $959.74 |
| | | 1300 | $10.34 | | $13,442.00 |
| | | 700 | $10.34 | | $7,238.00 |
| | Sub-Total | | | | **$61,600.00** |
| IMAX | 3/31/2006 | 262 | $10.16 | $2,661.92 | |
| | | 579 | $10.16 | $5,882.64 | |
| | | 4159 | $10.15 | $42,213.85 | |
| | Sub-Total | | | **$50,758.41** | |

Attachment A

# Jay M. Spritzler
# IMAX Securities Transactions

2422 Creek View Drive
Lancaster, PA 17602

| | | | | | |
|---|---|---|---|---|---|
| IMAX | 4/3/2006 | 900 | $10.34 | | $9,306.00 |
| | | 1600 | $10.26 | | $16,416.00 |
| | | 700 | $10.26 | | $7,182.00 |
| | | 698 | $10.26 | | $7,161.48 |
| | | 500 | $10.26 | | $5,130.00 |
| | | 400 | $10.26 | | $4,104.00 |
| | | 200 | $10.26 | | $2,052.00 |
| | | 2 | $10.26 | | $20.52 |
| | Sub-Total | | | | **$51,372.00** |
| IMQUU (Put Option) | 5/4/2006 | 50 | $0.25 | | **$1,250.00** |
| IMAX | 5/30/2006 | 4000 | $9.13 | $36,520.00 | |
| | | 1500 | $9.22 | $13,830.00 | |
| | | 4500 | $9.22 | $41,490.00 | |
| | Sub-Total | | | **$91,840.00** | |
| IMQHB (Call Option) | 7/18/2006 | 30 | $0.60 | | **$1,800.00** |
| IMQHB (Call Option) | 7/19/2006 | 30 | $0.70 | | $2,100.00 |
| | | 40 | $0.80 | | $3,200.00 |
| | Sub-Total | | | | **$5,300.00** |
| IMAX | 8/17/2006 | 5000 | $5.66 | | **$28,300.00** |
| IMQUU (Put Option) | 8/17/2006 | 10 | $2.15 | $2,150.00 | |
| | | 37 | $2.15 | $7,955.00 | |
| | | 3 | $2.10 | $630.00 | |
| | Sub-Total | | | **$10,735.00** | |
| IMAX | 8/23/2006 | 5000 | $4.84 | | **$24,200.00** |

# EXHIBIT B

Chimicles & Tikellis LLP

Attorneys At Law

# Firm Resume


HAVERFORD, PA
361 West Lancaster Avenue
Haverford, PA 19041
Voice: 610-642-8500
Toll Free: 866-399-2487
Fax: 610-649-3633

WILMINGTON, DE
P.O. Box 1035
One Rodney Square
Wilmington, DE 19899
Voice: 302-656-2500
Fax: 302-656-9053

# Contents

OUR ATTORNEYS


Partners

| | |
|---|---|
| Nicholas E. Chimicles | 3 |
| Pamela S. Tikellis | 8 |
| James R. Malone, Jr. | 11 |
| Michael D. Gottsch | 13 |
| Robert J. Kriner, Jr. | 14 |
| Steven A. Schwartz | 16 |
| Kimberly M. Donaldson | 19 |

Of Counsel

| | |
|---|---|
| Morris M. Shuster | 21 |
| Denise Davis Schwartzman | 22 |
| Anthony Allen Geyelin | 23 |
| Candice L.H. Hegedus | 24 |

Associates

| | |
|---|---|
| Timothy P. Briggs | 25 |
| Daniel J. Brown | 25 |
| Fatema Burkey | 26 |
| Benjamin F. Johns | 26 |
| Kimberly Litman Kimmel | 27 |
| Timothy N. Mathews | 27 |
| Mary Katherine Meermans | 28 |
| A. Zachary Naylor | 28 |
| Joseph G. Sauder | 30 |
| Daniel B. Scott | 32 |

PRACTICE AREAS 33

REPRESENTATIVE CASES 36



# Nicholas E. Chimicles

is senior partner and Chairman of the Firm's Executive Committee. Mr. Chimicles is a 1970 graduate of the University of Pennsylvania, where he received a Bachelor of Arts Degree with Honors. Mr. Chimicles graduated in 1973 from the University of Virginia School of Law, where he was a member of the Editorial Board of the University of Virginia Law Review and was the author of several published comments. While attending law school, he co-authored a course and study guide entitled "Student's Course Outline on Securities Regulation," published by the University of Virginia School of Law. Upon graduation from law school, Mr. Chimicles joined a major Philadelphia law firm where he practiced for eight years and specialized in litigation including complex commercial, antitrust and securities fraud cases and served as principal or assistant trial counsel in several matters.

Mr. Chimicles has actively prosecuted major complex litigation, antitrust, securities fraud and breach of fiduciary duty suits. Most recently, Mr. Chimicles was lead trial counsel for a Class of investors in a six-week jury trial of a securities fraud/breach of fiduciary duty case that resulted in a $185 million verdict. *In re Real Estate Associates Limited Partnerships Litigation*, No. CV 98-7035 DDP, was tried in the federal district court in Los Angeles before the Honorable Dean D. Pregerson. On November 15, 2002, the 10 member jury returned a unanimous verdict in favor of the Class (comprising investors in the eight REAL Partnerships) and against the REALs' managing general partner, National Partnership Investments Company ("NAPICO") and the four individual officers and directors of NAPICO. The jury awarded more than $25 million in damages against all five defendants on Count I, the Section 14(a), 1934 Act, proxy fraud claim and more than $67 million in damages against NAPICO on Count II for breach of fiduciary duty. On November 19, 2002, the jury returned a verdict of $92.5 million in punitive damages against NAPICO. This total verdict of $185 million was among the "Top 10 Verdicts of 2002," as reported by the National Law Journal (verdictsearch.com). The Court upheld in all respects the jury's verdict on liability as to both Count I and Count II, upheld in full the jury's award of $92.5 million in compensatory damages, upheld the Class's entitlement to punitive damages (but reduced those damages to $2.6 million based on the application of California law to NAPICO's financial condition), and awarded an additional $25 million in pre-judgment interest. Based on the Court's decisions on the post-trial motions, the judgment entered in favor of the Class on April 28, 2003 totaled over $120 million, $91 million on Count II and $30 million on Count I.

*Nicholas E. Chimicles cont.*

In other federal securities fraud action, he served as a lead counsel in the *Hercules Securities Litigation*, Civil Action No. 90-442 (RRM) (D. Del.) ($18 million recovery); *Scott Paper Securities Litigation*, Civil Action No. 90-6192 (E.D. Pa.) ($8 million recovery); *Sunrise Savings & Loan Securities Litigation*, MDL No. 655 (E.D. Pa.) ($15 million recovery); *Storage Technology Corp. Securities Litigation*, Master File No. 84-F-1981 (D. Colo.) ($18 million recovery); *In re Fiddler's Woods Bondholders Litigation*, Civil Action No. 83-2340 (E.D. Pa.), a bondholders' class action arising out of a default on a $33 million industrial development bond issue (recovery of more than $7 million for the Class); and *Charter Securities Litigation*, Civil Action No. 84-448 Civ-J-12 (M.D. Fla.) (recovery of $7.75 million); *Continental Illinois Securities Litigation*, Civil Action No. 82 C 4712 (N.D. Ill.) involving a twenty-week jury trial conducted by Mr. Chimicles that concluded in July, 1987 (the Class ultimately recovered nearly $40 million).

Mr. Chimicles has been a principal counsel in several major litigations that have resulted in precedent-breaking recoveries for classes of limited partners, in addition to the *Real Estate Associates Limited Partnership Litigation*, discussed above, Mr. Chimicles was a member of the Executive Committee in the *Prudential Limited Partnerships Litigation*, MDL 1005 (S.D.N.Y.), where the Class recovered $130 million in settlement from Prudential, and other defendants. Mr. Chimicles was lead counsel in the *PaineWebber Limited Partnerships Litigation*, 94 Civ. 8547 (S.D.N.Y.) in which a $200 million settlement was approved in mid-1997. As co-lead counsel in several litigations involving ML-Lee Acquisition Fund, L.P., ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. (C.A. No. 92-60, 93-494, 94-422 and 95-724) that were prosecuted in the Delaware Federal District Court. Mr. Chimicles (together with partner Pamela Tikellis and financial specialist Kathleen Chimicles) negotiated settlements that resulted in more than $30 million in cash and other benefits to be paid or made available to investors in the various funds. In litigation involving PLM Equipment Growth and Income Funds IV-VII, Mr. Chimicles (together with financial specialist Kathleen Chimicles) was instrumental in negotiating a settlement reached in 2001 that provides both monetary and equitable relief for the limited partners. In February 2002, the Superior Court of Marin County, California, approved the settlement of a case in which Mr. Chimicles was co-lead counsel, involving five public partnerships sponsored by Phoenix Leasing Incorporated and its affiliates and resulting in the payment of $21 million in cash. (*In Re Phoenix Leasing Incorporated Limited Partnership Litigation*, Superior Court of the State of California, County of Marin, Case No. 173739).

Mr. Chimicles has represented limited partners who successfully have sought the liquidation of assets or the reorganization of the partnership. For example, in *In re the Mendik Real Estate Limited Partnership*, N.Y. Supreme Ct. No. 97-600185, Mr. Chimicles, as co-lead counsel, negotiated a settlement which provided for the prompt sale of more than $100 million of the partnership's real estate assets. Additionally, as co-lead counsel, Mr. Chimicles, together with partner Pamela Tikellis, negotiated the settlement of a suit filed against the general partners of Aetna Real

Estate Associates, L.P., providing for the orderly liquidation of the more than $200 million in that partnership's real estate holdings, the reduction of general partner fees and the payment of a special cash distribution to the limited partners. (*Aetna Real Estate Associates, L.P., Area GP Corporation and Aetna/Area Corporation*, Delaware Chancery Court, New Castle County, Civil Action Nos. 15386-NC and 15393-NC).

Mr. Chimicles has also represented stockholders in suits arising from proposed mergers, acquisitions and hostile takeovers. For example, in *Garlands, Inc. Profit Sharing Plan et al. v. The Pillsbury Company, a Delaware corporation, et al*, State of Minnesota, County of Hennepin, Fourth Judicial District, Court File No. 88-17834, Mr. Chimicles was a lead counsel in a suit brought to compel Pillsbury's board of directors to negotiate in good faith with Grand Metropolitan and persuaded the court to enjoin a proposed spin-off of Burger King. Additionally, Mr. Chimicles has represented shareholders in obtaining enhanced consideration for their stock in takeovers or going private transactions. *Randee L. Shantzer, et al. v. Charter Medical Corp., et al.*, Court of Chancery, State of Delaware, New Castle County, Consolidated Civil Action No. 9530; *In re Interstate Bakeries Corporation Shareholders Litigation*, Court of Chancery, State of Delaware, New Castle County, Consolidate Civil Action No. 9263.

In the antitrust field, Mr. Chimicles has acted as a lead and co-lead counsel in numerous class suits. He was co-lead counsel in the *Travel Agency Commission Antitrust Litigation*, (D. Minn.) in which the Firm represented the American Society of Travel Agents, an Alexandria, Virginia-based association that represents more than 9,000 travel agencies nationwide and worldwide in a suit against seven airlines for Section 1 (Sherman Act) violations involving commission cuts. The case was settled in late 1996 for more than $80 million. Mr. Chimicles was also co-lead counsel in the *Insurance Antitrust Litigation*, Case No. C-88-1688 (N.D. Calif.) which charged commercial general liability insurers, domestic and London-based reinsurers and an insurance service organization with violations of the Sherman and Clayton Acts. The case was settled after an earlier dismissal was reversed by the Ninth Circuit, a decision affirmed by the U.S. Supreme Court. *In re Insurance Antitrust Litigation*, 938 F.2d 919 (9th Cir. 1991); *aff'd sub nom. Hartford Fire Insurance Co. v. California*, 113 S.Ct. 2891 (1993).

As an appellate advocate, Mr. Chimicles has handled cases which have protected the rights of victims of securities fraud in bankruptcy proceedings. In cases that he successfully argued before the Courts of Appeals for the Tenth and Eleventh Circuits, due process and notice principles were extended to protect securities purchasers filing claims in bankruptcy cases, *In re Standard Metals Corp.*, 817 F.2d 625 (10th Cir.), *rev'd in part on rehearing*, 839 F.2d 1383 (1987), and it was established that class proofs of claim are allowable in bankruptcy proceedings, *In re the Charter Company*, 876 F.2d 866 (11th Cir. 1989).

Mr. Chimicles has also actively prosecuted suits involving public utilities constructing nuclear plants. He was lead counsel in the *Philadelphia Electric Company Securities Litigation*, Master File No. 85-1878 (E.D. Pa.) and a lead counsel in the *Consumers Power Company Derivative Litigation*, Master File No. 84-CV-3788 AA (E.D. Mich.). Mr. Chimicles was co-lead counsel in the stockholder derivative suit arising from mismanagement claims against former officers of Philadelphia Electric Company involved in the closing of the Peach Bottom Nuclear Plant, a suit which Mr. Chimicles was authorized to bring by a PECO board of directors resolution. *In re Philadelphia Electric Company Derivative Litigation*, Case No. 7090, Court of Common Pleas, Philadelphia County, PA. That case resulted in a recovery of $35 million for the utility company in November 1990.

Mr. Chimicles was also a co-lead counsel in a major environmental litigation, *Ashland Oil Spill Litigation*, Master File M-14670 (W.D. Pa.), involving the claims of residents and businesses for damage arising from the largest inland waterway oil spill in history that occurred on January 2, 1988 in Pittsburgh. In 1990, the case was settled upon creation of a claims fund of over $30 million for the class. This and similar environmental suits in which the Firm was involved were the subject of a program, "Toxic Torts May Not Be Hazardous To Your Health: A Lawyer's Guide to Health Survival in Mass Tort Litigation," in which Mr. Chimicles was a principal speaker at this program which was held at the American Bar Association's 1989 Convention in Honolulu.

Mr. Chimicles has acted as special counsel for the City of Philadelphia and the Philadelphia Housing Authority in an action seeking to hold lead pigment manufacturers liable for federally mandated abatement of lead paint in properties owned, managed or operated by the plaintiffs. *City of Philadelphia, et al. v. Lead Industries Ass'n, et al.*, Civil Action No. 90-7064 (E.D. Pa.) and No. 92-1420 (3rd Cir.).

Mr. Chimicles is admitted to practice in the Supreme Court of the United States, numerous federal district and appellate courts, as well as the Supreme Court of Pennsylvania. He is a member of the American Bar Association (Sections of Litigation; Antitrust; and Corporation, Banking and Business Law), the Pennsylvania Bar Association, and the Philadelphia Bar Association (Federal Courts Committee and various subcommittees). Mr. Chimicles has lectured frequently on securities law at the Rutgers University Law School Camden, the Wharton School Graduate Division of the University of Pennsylvania, New York University, the University of Virginia, and for Prentice Hall Law and Business Publications. Mr. Chimicles has addressed numerous law and accounting conferences, including ALI-ABA, Practising Law Institute, the Pennsylvania Bond Counsel Association and the Pennsylvania Institute of Public Accountants, and has also frequently appeared as a speaker in numerous state and national bar association sponsored seminars on topics involving federal securities laws, RICO, class actions, hostile corporate takeovers, and professional ethics. Mr. Chimicles also is a contributor to and member of the advisory boards of various professional publications involving the securities law field. Mr. Chimicles is

a member of the Board of Overseers of the School of Arts and Sciences of the University of Pennsylvania. He is the past President of the National Association of Securities and Commercial Law Attorneys. Mr. Chimicles is the author of numerous articles including an article co-authored with the Firm's Financial Specialist, Kathleen P. Chimicles nee Balon, published in the *New York Law Journal*, August 26, 1993, entitled "A Realistic Assessment Of The Need For Securities Class Action Litigation Reform;" and *The Securities Case: The Plaintiff's Perspective*, co-authored with Ira N. Richards, published in the Practical Litigator, Vol. 6, No. 6 (Nov. 1995).



# Pamela S. Tikellis

PAMELA S. TIKELLIS is a name partner and a member of the Firm's Executive Committee. Ms. Tikellis was born in Lawrence, Kansas and is a 1974 graduate of Manhattanville College, where she received a Bachelor of Arts, and a 1976 graduate of the Graduate Faculty of the New School for Social Research, where she received a Master's in Psychology. Ms. Tikellis graduated in 1982 from Widener University School of Law, where she was the Managing Editor of the Delaware Journal of Corporate Law. Upon graduating from law school, Ms. Tikellis served as a law clerk in the nationally recognized Court of Chancery in Wilmington, Delaware. Before joining the Firm, Ms. Tikellis engaged in significant shareholder litigation practice. In 1987, she opened the Delaware office of the Firm, where she is a resident and has continued to specialize in litigation, including complex transactional cases, both derivative and class, limited partnership litigation, antitrust and securities fraud litigation. She is AV rated by Martindale Hubbell.

Ms. Tikellis has prosecuted class and derivative suits of national importance for over 20 years. Notably, Ms. Tikellis has represented stockholders in numerous suits, primarily in the Court of Chancery in Wilmington, Delaware arising out of mergers and acquisitions and hostile takeovers. Ms. Tikellis served as liaison counsel in the litigation arising out of the Paramount/Viacom merger. She and her co-counsel represented Paramount stockholders in the successful challenge to the merger and were instrumental in eliciting the highest possible value to the stockholders. (Court of Chancery Civil Action No. 13117; Delaware Supreme Court No. 427, 1993). Similarly, Ms. Tikellis served as lead counsel in *Home Shopping Network Shareholders and Securities Litigation*, (C.A. No. 93-406; Court of Chancery, Cons. C.A. No. 12868; Delaware District Court C.A. No. 93-336 (MMS)) obtaining over $15 million in settlement funds for the class of Home Shopping stockholders. More recently, as lead counsel, she actively prosecuted litigation on behalf of Cyprus Amax stockholders arising out of a proposed merger with Asarco and helped achieve a merger for Cyprus Amax with Phelps Dodge for greater consideration than was offered by Asarco. (*In re Cyprus Amax Shareholders Litigation*, Court of Chancery, C.A. No. 17383-NC). Ms. Tikellis also acted as one of lead counsel representing a Class of stockholders of First Interstate Bancorp prior to the acquisition of First Interstate by Wells Fargo & Co. The litigation resulted in Wells Fargo's acquisition of First Interstate for a substantially greater consideration than offered by the First Bank Systems in a battle for the company. (*First Interstate Bancorp Shareholders Litigation*, Cons. C.A. No. 14623).

Ms. Tikellis has actively prosecuted derivative litigation on behalf of companies and

their stockholders. *Sanders v. Wang*, DE Court of Chancery C.A. No. 16640, was a derivative suit brought on behalf of Computer Associates International, Inc. The suit alleged that the board exceeded its authority under the KESOP by awarding 9.5 million excess shares to the participants. Ms. Tikellis was instrumental in achieving the return from the defendants of over $50 million in stock issued in violation of the Company's plan. This represented a recovery of substantially all of the relief sought by Plaintiffs. Reported decisions include 1998 Del. Ch. LEXIS 207 (Del. Ch. Nov 19, 1998); 1999 Del. Ch. LEXIS 203 (Del. Ch. Nov. 8, 1999); 2001 Del. Ch. LEXIS 82 (Del. Ch. May 24, 2001); 2001 Del. LEXIS 387 (Del. Aug. 22, 2001); 2001 Del. Ch. LEXIS 121 (Del. Ch. Sept. 18, 2001).

In the limited partnership arena, Ms. Tikellis along with partner Nicholas Chimicles has actively and successfully prosecuted several cases including *ML Lee Acquisition Fund L.P.* and *ML-Lee Acquisition Fund II L.P.* and *ML-Lee Acquisition Fund* (Retirement Accounts), (C.A. Nos. 92-60, 93-494, 94-422, and 95-724). The litigation resulted in a negotiated settlement exceeding $30 million in cash and other benefits made available to investors in these funds. In another limited partnership matter, Ms. Tikellis along with partner Nicholas Chimicles was successful in representing limited partners of Aetna Real Estate Associates L.P. This settlement provided for the orderly liquidation of more than $200 million in the partnership's real estate holdings and reduction of general partners' fees and the payment of a special cash distribution to the limited partners (*Aetna Real Estate Associates, L.P.,* Delaware Court of Chancery, C. A. Nos. 15386-NC and 15393-NC).

On the Appellate level, Ms. Tikellis has successfully handled cases before the Delaware Supreme Court resulting in victories for the shareholders and investors. Within the years of 2002 and 2003, Ms. Tikellis argued successfully three appeals in the Delaware Supreme Court. She argued *en banc* to the Delaware Supreme Court in *Saito v. McKesson Corporation*, Civil Action No. 18553. This books and records case was tried by Ms. Tikellis. While the Court of Chancery permitted production of certain documents, the Court imposed severe restrictions. The limitations imposed by the Court of Chancery were appealed successfully by the Plaintiff. Importantly, the documents ultimately received in the books and records *Saito* case resulted in the filing of an amended derivative complaint in the underlying case against McKesson and its directors. The derivative suit was recently settled and the settlement won approval by the Court of Chancery. The settlement provides for a $30 million payment to the Company by the insurance carriers for the directors and the implementation of important corporate governance reforms.

Most recently, in a case argued by Ms. Tikellis, the Delaware Supreme Court overruled the Court of Chancery's determination that accorded the presumption of the business judgment rule to a board's merger recommendation even though 5 of the 7 directors were interested in the transaction. The Supreme Court held that the mere existence of a purportedly disinterested special committee (consisting of the other two board members) did not shield the remaining 5 members from liability. *Krasner*

*v. Moffett*, 826 A.2d 277 (Del. June 18, 2003). Importantly, the Court held that a full record needed to be developed to determine whether the entire fairness standard of review or the business judgment standard of review would apply in the case. The decision has broken new ground in the field of corporate litigation in Delaware. A settlement providing for a $17.5 million fund for the Class was approved by the Court of Chancery on April 20, 2006.

Ms. Tikellis is admitted to practice before all Courts in the State of Delaware and the United States Court of Appeals for the Third Circuit. She is a member of the Delaware Bar Association and the American Bar Association (Litigation and Business Sections). Ms. Tikellis has served as a member of the Board of Bar Examiners of the Supreme Court of the State of Delaware since 1994. She also served as the Chair of the Delaware Bar Association Ethics Committee from 1989 to 1992, and is a director of the Historical Society of the Court of Chancery for the State of Delaware. In addition, Ms. Tikellis is President of the Delaware chapter of the International Network of Boutique Law Firms.

Ms. Tikellis has addressed numerous conferences including ALI-ABA, The Practising Law Institute, the American Bar Association, the Delaware Bar Association, and the Pennsylvania Bar Institution lecturing on corporate governance, merger and acquisitions, hostile takeovers, defense mechanisms and professional ethics. She has participated as a commentator on corporate governance as part of the Institute for Law and Economic Policy's program on Corporate Accountability and recently addressed institutional investors at the OPAL Conference regarding the various tools available in Delaware to protect shareholder rights. Ms. Tikellis was a member of the faculty of the 7th Annual Colorado Business Law Institute that was held in Vail, Colorado on August 10-12, 2006. She participated on a panel featuring the Honorable Phillip S. Figa of the United States District Court for the District of Colorado and the Honorable Leland P. Anderson of the Colorado State District Court addressing the topic of fiduciary duties.



# James R. Malone, Jr.

Is a partner in the law firm of Chimicles & Tikellis. Mr. Malone is admitted to practice before the Supreme Court of Pennsyl-vania, the Supreme Court of the United States, the United States Courts of Appeal for the First, Third, Fifth, Sixth, Seventh, Ninth and D.C. Circuits and the United States District Courts for the Eastern District of Pennsylvania, the Northern District of California, and the Eastern District of Michigan. Mr. Malone is a 1984 *cum laude* graduate of the Villanova University School of Law where he was a staff member on the Villanova Law Review and was elected to the Order of the Coif. Upon graduation from law school, Mr. Malone was associated with a major Philadelphia law firm where he concentrated in bankruptcy and commercial litigation.

Mr. Malone has substantial experience in the securities field. With his former partner, Oliver Burt, he served as co-lead counsel in *Hoexter v. Simmons*, Civ. No. 89-1069-PHX-RCB (D. Ariz.) in which a $10.8 million settlement was achieved. In *Serabian v. Amoskeag Bank*, 24 F.3d 357 (1st Cir. 1994), Mr. Malone successfully argued for the reversal of a district court order dismissing a securities complaint in a case involving deceptive financial reporting by a New Hampshire bank holding company. Mr. Malone served as co-lead counsel in *Winsor v. Holgerson*, No. 89-2507 (PBS) (D. Mass.), a case involving the accounting practices of a failed savings bank, in which a $12.5 million settlement was reached. Mr. Malone has been active in cases involving public offerings of limited partnerships; he served as lead counsel in *In re Jiffy Lube Insured Income Partners Securities Litigation*. Civil Action No. 10828 (Del. Ch.). The settlement resulted in limited partnership investors receiving the full amount of their initial investment. He has also been active in transactional cases, such as limited partnership roll-ups, and in shareholder derivative actions. Currently, he is active in *DeBenedictis v. Merrill Lynch & Co., Inc.,* No. 04-404 (JLL)(D.N.J.), a class action challenging the sufficiency of Merrill Lynch's prospectus disclosures for Class B shares in its proprietary mutual funds.

In the area of consumer litigation, Mr. Malone was a member of the Executive Committee in *In re Advanta Credit Card Terms Litigation*, MDL Docket No. 1233, a consumer case brought on behalf of credit card holders. The case resulted in a settlement of $ 7.25 million dollars that also provided for substantial reductions in rates for credit card holders. Along with his partner, Michael Gottsch, Mr. Malone was active in *Flannick v. First Union Home Equity Bank, N.A.,* No. 98-6080, an action brought under the National Bank Act against a home equity lender, which resulted in a substantial recovery.

In the field of ERISA litigation, Mr. Malone served as co-lead counsel in *In re Unisys Savings Plan Litigation*, 74 F.3d 420 (3d Cir. 1996), in which he successfully argued for the reversal of a district court order granting summary judgment in an ERISA class action arising out of the failure of the Executive Life Insurance Company. The case was the first appellate decision addressing Section 404(c) of ERISA and the liability of fiduciaries in certain individual account plans. Mr. Malone served as counsel in *Corcoran v. Bell Atlantic Corporation*, 97-cv-510 (E.D. Pa.) an ERISA class action challenging the conversion of a defined benefit pension plan into a cash balance plan. The case involved issues relating to the calculation of accrued benefits under ERISA's vesting standards and the elimination of early retirement benefits. He is currently active in *In re Lucent Death Benefits Litigation,* No. 2:03-5017(WGB)(D.N.J.), which challenges Lucent's elimination of spousal death benefits for retirees that were funded as part of a defined benefit pension plan, and in *Charles v. Pepco Holdings, Inc.,* No. 05-702-SLR (D. Del.), a class action challenging the conversion of a traditional pension plan to a cash balance plan.

Mr. Malone has been involved in a variety of different antitrust actions in both state and federal court. He was active in indirect purchaser actions arising out of price-fixing in the market for sorbates pending in Tennessee and Wisconsin; the resolution of these cases resulted in substantial recoveries by indirect purchasers. Mr. Malone was also active in *In re Microsoft Antitrust Litig.,* MDL No. 1332, and in *In re Buspirone Antitrust Litigation*, MDL No. 1413, where he served in a variety of roles. Mr. Malone is currently active in *In re Plavix Indirect Purchaser Antitrust Litigation*, No. 06-226 (S.D. Ohio), and in *In re Intel Corp. Microprocessor Litigation*, MDL No. 1717 (D. Del.).

Mr. Malone served as co-lead counsel in *Gersenson v. Pennsylvania Life & Health Insurance Guaranty Association*, April Term 1994, No. 3468, an insurance insolvency class action brought under the Pennsylvania Life & Health Insurance Guaranty Association Act. In June 1998, the Philadelphia Court of Common Pleas granted summary judgment in favor of the plaintiff class in the amount of $16.5 million dollars. Mr. Malone successfully argued the resulting appeal and successfully opposed the defendant's petition for allocatur before the Supreme Court of Pennsylvania.

Mr. Malone is a member of The Philadelphia Bar Association, and is active on its *cypres* committee, which works to assure that unclaimed class settlement funds are put to appropriate charitable uses.



# Michael D. Gottsch

is a partner in the Firm's Haverford office. Mr. Gottsch is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey and the United States Courts of Appeals for the Third and Ninth Circuits. He is a graduate of Temple University School of Law (J.D. 1983) and Marquette University (B.S. 1977). From 1986 to 1987 he served as a Law Clerk to the Honorable Joseph H. Rodriguez, Judge of the United States District Court for the District of New Jersey.

Mr. Gottsch has concentrated his practice in the fields of Antitrust and Consumer Protection law. As a partner in the firm, recent cases in which he has served in the role of lead or co-lead counsel are: *McParland v. Keystone Health Plan Central*, Civil Action No. 98-SU-00770-01 (Common Pleas Court York County) (case successfully resolved on behalf of a class of approximately 15,000 senior citizens who enrolled in Keystone's "Senior Blue" program); *Flannick v. First Union Home Equity Bank, N.A.*, Civil Action No. 98-CV-6080 (E.D. Pa.) (case successfully resolved on behalf of a class of approximately 32,000 home equity borrowers from First Union Home Equity Bank); and *GFS of Madison, Inc. v. Rhone-Poulenc, S.A.*, Case No. 00-CV-1143 (Cir. Ct. Dane County, Wis.) ("Methionine antitrust litigation") (action pending). Mr. Gottsch has assisted in the firm's pro bono efforts in the area of immigration asylum appeals. He is the treasurer of the Committee to Support the Antitrust Laws ("COSAL"), a Washington, D.C. based organization committed to supporting diligent enforcement of the federal and state antitrust laws. In June 2006, Law & Politics and the publishers of Philadelphia Magazine named Mr. Gottsch a Pennsylvania Super Lawyer. Super Lawyers are the top 5 percent of attorneys in Pennsylvania, as chosen by their peers and through the independent research of Law & Politics.



# Robert J. Kriner, Jr.

is a Partner in the Firm's Wilmington, Delaware office. He is admitted to practice before the Supreme Court of Delaware and the United States District Court for the District of Delaware. Mr. Kriner is a 1983 graduate of the University of Delaware with a degree in chemistry, and a 1988 graduate of the Delaware Law School of Widener University, where he was managing editor of *The Delaware Journal of Corporate Law.* From 1988 to 1989, Mr. Kriner served as law clerk to the Honorable James L. Latchum, Senior Judge of the United States District Court for the District of Delaware. Following his clerkship and until joining the Firm, Mr. Kriner was an associate with a major Wilmington, Delaware law firm, practicing in the areas of corporate and general litigation.

Mr. Kriner's practice focuses primarily on business litigation on behalf of investors. Mr. Kriner has prosecuted actions, including class and derivative actions, on behalf of stockholders, limited partners and other investors with claims relating to mergers and acquisitions, hostile acquisition proposals, the enforcement of fiduciary duties, the election of directors, and the enforcement of statutory rights of investors such as the right to inspect books and records. Mr. Kriner prosecuted the *Home Shopping Network, McKesson* and *Moffett* matters along with Partner Pamela Tikellis. In addition, Mr. Kriner represented holders of Series B stock of Litton Industries in *Myers and Koehler v. Litton Industries, Inc., et al.,* C.A. No. 18947-NC in connection with the short form merger cash out of the Series B stock in 2001. The short form merger price was $35 per share. Mr. Kriner negotiated a settlement of the claims which provided an additional $1.84 per share to the Series B holders.

Mr. Kriner also was on the trial team in *Gelfman, et al. v. Weeden Investors, L.P., et al.*, C.A. No. 18519-NC, which was tried in the Delaware Court of Chancery and resulted in a judgment in favor of the limited partners represented by Mr. Kriner. In *Weeden,* the limited partners represented by Mr. Kriner asserted that dilution and a cash out of their interests at a book value of $4.20 per Unit was unfair and in violation of the Partnership Agreement and the General Partner's fiduciary duties. After trial, the Court agreed, concluding the value of the interests was $20.92 per Unit, 4.98 times that paid on the cash out plan, and awarded damages to the limited partners.

Mr. Kriner represented the public limited partners in *I.G. Holdings, Inc., et al. v. Hallwood Realty LLC, et al.*, C.A. No. 20283-NC, in an action challenging the defensive response of the General Partner of Hallwood Partners LP to a premium tender

offer by an affiliate of Carl Icahn in 2003. Mr. Kriner led the litigation on behalf of the public limited partners through expedited injunction proceedings and an expedited trial which led to the General Partner's agreement to auction and sell the Partnership. The sale of the Partnership resulted in a per unit price of $136.70 to the limited partners, as compared to the trading range for the Units of $60 - $80 prior to the litigation.

Recently, Mr. Kriner was one of the co-lead counsel in actions brought on behalf of the public stockholders of Chiron Corporation challenging the buyout of Chiron by its 42% parent, Novartis AG. Novartis initially proposed a buyout at $40 per share and thereafter entered into a merger agreement to acquire Chiron for $45 per share. Mr. Kriner and his co-counsel moved preliminarily to enjoin the merger pending a proper process to maximize value and full disclosure to the stockholders. After completion of briefing on the injunction motion, an agreement in principle was reached for a settlement of this litigation which includes, among other things, an increase in the merger price to $48 per share, or an aggregate increase of over $330 million for the public stockholders.

Mr. Kriner is an associate member of the Board of Bar Examiners of the Supreme Court of the State of Delaware.



# Steven A. Schwartz

a Partner in the Firm's Haverford office, is admitted to practice before the United States Supreme Court, the Supreme Court of Pennsylvania, the United States District Courts for the Eastern and Western Districts of Pennsylvania and the Eastern District of Michigan, and the United States Court of Appeals for the Third Circuit. He is a graduate of the Duke University School of Law (J.D. 1987) where he served as a senior editor of *Law & Contemporary Problems*. He is a 1984 *cum laude* graduate of the University of Pennsylvania, where he received a B.A. in political science. Mr. Schwartz previously practiced at Schnader, Harrison, Segal & Lewis, LLP, a major Philadelphia firm, concentrating in complex civil litigation.

Mr. Schwartz has actively prosecuted complex class actions in a wide variety of contexts. Most recently, he served as co-lead counsel for a certified national class of employees of Siemens Medical Solutions whose 1998 Incentive Compensation was retroactively reduced by 30% by Siemens. The Philadelphia Court of Common Pleas granted Plaintiffs' motion for summary judgment as to liability, and a few days before trial was scheduled to begin, Siemens agreed to pay Class members a net recovery of the full amount that their incentive compensation was reduced (approximately $10.1 million), and pay all counsel fees and expenses in addition to the Class members' recovery.

Similarly, in connection with the withdrawal by Bayer of its anti-cholesterol drug Baycol, Mr. Schwartz represents various Health and Welfare Funds (including the Pennsylvania Employees Benefit Trust Fund, the Philadelphia Firefighters Union, and the American Federation of State, County and Municipal Workers District Council 47) and a certified national class of "third party payors" seeking damages for the sums paid to purchase Baycol for their members/insureds and to pay for the costs of switching their members/insureds from Baycol to an another cholesterol-lowering drug. The Philadelphia Court of Common Pleas granted plaintiffs' motion for summary judgment as to liability; this is the first and only judgment that has been entered against Bayer anywhere in the United States in connection with the withdrawal of Baycol. The Court subsequently certified a national class, and the parties recently reached a settlement in which Bayer agreed to pay class members a net recovery that approximated the maximum damages (including pre-judgment interest) suffered by class members.

In the securities litigation field, as lead or co-lead counsel, Mr. Schwartz has obtained significant recoveries for defrauded investors. In *In re Coin Fund Litigation*,

*Steven A. Schwartz cont.*

(Superior Court of the State of California for the County of Los Angeles), Mr. Schwartz served as plaintiffs' co-lead counsel and successfully obtained a settlement in excess of $35 million on behalf of limited partners, which represented a 100% net recovery of their initial investments. Mr. Schwartz also served as Plaintiffs co-lead counsel in *In re Veritas Software Corp. Derivative Litigation* (Superior Court of the State of California for the County of Santa Clara). In early 2005, the Court approved a settlement in which Veritas agreed to extensive corporate governance changes, including requiring that 75% of the members of Veritas' Board of Directors would be independent directors, and that all reporting 16b officers and directors of the Company would be prohibited from engaging in any sales of Veritas' stock except pursuant to a newly-enacted 10b5- 1 Trading Plan. Mr. Schwartz currently serves as Plaintiffs' co-lead counsel in the *Pennexx Securities Litigation*, (E.D. Pa.) and liaison counsel in *In re DVI Securities Litigation*, (E.D. Pa.).

In the consumer protection field, Mr. Schwartz served as plaintiffs' co-lead counsel in *Wolens, et al. v. American Airlines, Inc.* In that class action, plaintiffs alleged that American Airlines breached its contracts with members of its AAdvantage frequent flyer program when it retroactively increased the number of frequent flyer miles needed to claim certain frequent flyer miles travel awards. In a landmark decision, the United States Supreme Court held that plaintiffs' claims were not preempted by the Federal Aviation Act. 513 U.S. 219 (1995). The parties ultimately reached a settlement in which American agreed to provide Class members with mileage certificates that represent, for practical purposes, the full extent of class members' alleged damages, which the Court valued at between $ 95.6 million to $141.6 million. Mr. Schwartz also represented a national Class of owners of wood clad doors and windows manufactured by Marvin Windows that prematurely rotted due to a defective wood preservative. (Minn. 4th Judicial Dist.). Even though the windows were between 12 and 16 years old, the parties reached a national settlement providing Class members with the opportunity to obtain replacement windows with minimum net discounts of between 45 % and 58 %.

In the environmental field, Mr. Schwartz played a significant role as part of a large team of plaintiffs' counsel who prosecuted the claims of fisherman, property owners, and Native Americans who were injured as a result of the Exxon Valdez oil spill. The trial of that case resulted in a jury verdict in excess of $5.3 billion. Appellate proceedings in the 9th Circuit Court of Appeals are still ongoing.

Mr. Schwartz has also developed an expertise in representing the interests of providers of medical services whose bills have been denied for payment by insurers. Mr. Schwartz represented a certified class of Pennsylvania physicians and chiropractors who were not paid by Nationwide Mutual Insurance Company for physical therapy/ physical medicine services provided to its insureds. Nationwide agreed to pay Class members approximately 130% of their bills. Mr. Schwartz is currently representing certified classes of medical providers seeking interest for overdue bills for treatment provided to insureds of SEPTA and Progressive Insurance Company.

In the product liability field, Mr. Schwartz served as a member of the Plaintiffs' Steering Committee for medical monitoring claims in *In re Pennsylvania Diet Drugs Litigation*, (Phila. C.C.P.). To settle that case, American Home Products agreed to pay for an extensive medical monitoring program for all Pennsylvania residents who ingested fenfluramine and dexfenfloramine, the "fen" of the "fen phen" diet drug combination.



## Kimberly M. Donaldson

a Partner in the Firm's Haverford office, is a 1999 *cum laude* graduate of Villanova University School of Law and is a 1996 graduate of Boston University, where she received a B.A. in Political Science, and interned with the Massachusetts Office of the Attorney General, Public Protection Bureau. Ms. Donaldson is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, and various Federal Appellate and District Courts. Ms. Donaldson's practice includes the representation of investors in major complex securities fraud litigation and breach of fiduciary duty lawsuits. Ms. Donaldson's pro bono activities include serving as a volunteer attorney with the Support Center for Child Advocates, a Philadelphia-based, nonprofit organization that provides legal and social services to abused and neglected children.

As the principal trial assistant to Mr. Chimicles, Ms. Donaldson was an integral member of the trial team that obtained the *first* plaintiffs' jury verdict in a federal securities fraud/breach of fiduciary duty lawsuit tried to a jury in the past ten years. *In re Real Estate Associates Limited Partnerships Litigation*, No. CV 98-7035 DDP (Federal District Court, Los Angeles). The total verdict of $185 million (including $92.5 million in punitive damages) was among the "Top 10" Verdicts of 2002 and stands as the *first* and *largest jury verdict* in favor of plaintiffs in a case brought under the federal securities laws since their amendment in 1995. The *Real Estate Associates* judgment was settled by an agreement approved by the Court in November 2003 for $83 million, which represented *full recovery* for the Class (and an amount in excess of the damages calculated by Plaintiffs' expert). Please refer to Mr. Chimicles' bio for additional information.

Also, together with the Firm's Partners, Ms. Donaldson has assisted, or is currently assisting, in the prosecution of several federal securities fraud cases, breach of fiduciary duty suits and corporate derivative actions, including the following:

- *CNL Hotels & Resorts Inc. Federal Securities Litigation*, Case No. 6:04-cv-1231 (M.D. Fla) (The Firm is lead trial counsel in this pending action filed in 2004 asserting federal securities law claims under the 1933 Securities Act involving a $3.0 Billion real estate investment trust whose stock is not listed on a national stock exchange).

- *Lewis, et al. v. CNL Income Funds, et al*, District Court of Dallas County, Texas. (The Firm is co-lead counsel in this pending action filed in 2005 on behalf of lim-

*Kimberly M. Donaldson cont.*

ited partners in 18 Florida limited partnerships who were requested to approve a $1.6 Billion three-way merger involving their limited partnerships. Among other things, the Complaint alleges that the General Partners breached their fiduciary duties by approving a Merger that provided the Limited Partners with inadequate consideration, and by disseminating a misleading Proxy on which the Limited Partners were asked to cast their vote on the Merger).

- *Pennexx Securities Litigation*, No. 2:03-CV-4318 (E.D. Pa.) (The Firm is co-lead counsel in this pending securities fraud class action lawsuit filed in 2003 on behalf of public investors in Pennexx Foods, Inc. ("Pennexx"). Certain of the District Court's rulings on Defendants' Motions to Dismiss are currently being appealed to the Third Circuit Court of Appeals).

Together with the Firm's Partners, Ms. Donaldson has also assisted in the prosecution of actions involving health and welfare issues, including actions to recover excessive charges due to fraud and other misconduct by health service providers, and antitrust claims to recover excessive prescription drug charges and other costs due to corporate collusion and misconduct.



# Morris M. Shuster

Of Counsel, is admitted to practice before the United States Supreme Court, United States Court of Appeals for the Third Circuit, the United States District Court for the Eastern District of Pennsylvania, the Supreme Court of Pennsylvania, and all other Pennsylvania Appellate and trial courts.

Mr. Shuster is a graduate of the Wharton School, University of Pennsylvania (B.S. in Economics, 1951), and of the University of Pennsylvania Law School (J.D., 1954). Prior to joining the Firm, Mr. Shuster was an active civil litigator as an associate and partner in a major Philadelphia litigation firm, as a named-partner in his own firm, and as special litigation counsel to a large Philadelphia, full-service firm. Over the last 20 years, he has concentrated his practice in consumer class actions against banks and insurance companies. He has been successful in obtaining multi-million dollar recoveries in these cases.

Mr. Shuster is currently a faculty member at the University of Pennsylvania Law School where he teaches Trial Advocacy. In 1981, he was a full-time faculty member at the University of Pennsylvania Law School and taught a course in The Lawyering Process. He also has been a guest lecturer on various legal subjects at the University of Pennsylvania Law School, Medical School, and Dental School, and at Drexel University. He is a member of the Advisory Committee for the Public Service Program at the University of Pennsylvania Law School where he developed the mentor/student pro bono project.

Mr. Shuster is a past president of The Philadelphia Trial Lawyers' Association. He was appointed by the Third Circuit Court of Appeals as Chairperson of the Bankruptcy Judge Search Committee. He was appointed by the District Court for the Eastern District of Pennsylvania as Chairperson of a Panel to consider the reappointment of a U.S. Magistrate.

In the Philadelphia Bar Association, Mr. Shuster has served as a member of the Board of Governors, Committee on Judicial Selection and Reform, Committee on Civil Legislation/Legislative Liaison, Committee on Civil Judicial Procedure (state courts) and Chairperson of the Judicial Commission. He is listed in *Who's Who in American Law*.



# Denise Davis Schwartzman

Of Counsel, is admitted to practice in Pennsylvania, Florida, Texas and the District of Columbia. She is admitted to practice before all the State Courts in these jurisdictions and is admitted to the United States Courts of Appeals for the Third, Fifth, Eleventh and District of Columbia Circuits as well as United States District Courts within each Circuit. Ms. Schwartzman is a graduate of The Law School of the University of Pennsylvania (L.L.B. 1969) and Temple University (A.B. 1966). She holds a Master of Laws in Taxation from the Villanova University Law School. Ms. Schwartzman has practiced extensively at the trial and appellate levels before Federal and State Courts and before various administrative agencies.

Ms. Schwartzman was appellate counsel on the brief in *In re Charter Company*, 876 F.2d 866 (11th Cir. 1989), a case which established that class proofs of claim are allowable in bankruptcy proceedings, served on the trial team in *Ashland Oil Spill Litigation*, Master file M-14670 (W.D. Pa), *In re Sunrise Securities Litigation*, MDL No. 685 (E.D.Pa.) and represented our firm on the Litigation Committee in *Prudential Securities Incorporated Limited Partnership Litigation*, MDL 1005 (S.D.N.Y.). Ms. Schwartzman represented the Firm on the plaintiffs' co-lead counsel committee in *Spitzer v. Abdelhak*, No. 98-CV-6475 (E.D.Pa.), a civil RICO action which recovered damages on behalf of the physicians and research scientists of the now defunct Allegheny Health Education and Research Foundation (AHERF), a major health care provider in the Delaware Valley and is a senior member of the trial team for the Firm in *In re Mutual Funds Investment Litigation,* MDL 1586, a complex coordinated derivative action alleging violations of the Investment Company Act and the Investment Advisers Act by the investment advisers to eighteen mutual fund families. Prior to relocating to Philadelphia, she was associated with a major law firm in San Antonio, Texas.



# Anthony Allen Geyelin

Of Counsel, is admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the Supreme Court of Pennsylvania.

Mr. Geyelin is a graduate of the University of Virginia (B.A. in English, 1968) and the Villanova University School of Law (J.D. 1974 *cum laude*), where he was a member of the Moot Court Board, an Associate Editor of the *Villanova Law Review*, and a recipient of the Obert Corporate Law Award. After graduation from law school Mr. Geyelin was an associate in the business department of a major Philadelphia law firm before accepting an appointment as Chief Counsel to the Pennsylvania Insurance Department in Harrisburg, an office he held from 1981 through 1983. Mr. Geyelin served as Pennsylvania's Acting Insurance Commissioner in 1983 and 1984. In 1985 Mr. Geyelin accepted the position as chief inside counsel for Academy Insurance Group, Inc. in Valley Forge, Pennsylvania and Atlanta, Georgia, serving as General Counsel and Secretary of the publicly traded holding company and its operating subsidiaries. In 1994 Mr. Geyelin was appointed Secretary and General Counsel of Penn-America Insurance Company in Hatboro, Pennsylvania, and in 1995 assumed the same offices with Penn-America Group, Inc., the publicly traded parent company. From 1997 until joining the Firm Mr. Geyelin was in private practice, concentrating on general business, insurance regulatory and litigation support matters.



# Candice L.H. Hegedus

Of Counsel, is admitted to practice before the Supreme Court of Pennsylvania, the United States District Court for the Eastern District of Pennsylvania, and the United States Court of Appeals for the Third Circuit. She is a graduate of Villanova University School of Law (J.D. 1979) and Muhlenberg College (B.A. 1974 *cum laude*). Prior to joining the Firm, she practiced with major Philadelphia litigation firms. The focus of her practice is complex litigation, including securities fraud and limited partnership cases behalf of shareholders and antitrust matters. Ms. Hegedus was a member of the team who litigated *In re Real Estate Associates Limited Partnership Litigation*, No. CV-98-7035 (Federal District Court, Los Angeles), a case brought for violation of federal securities laws. Following a six-week trial in November 2002, the jury returned a $185 million plaintiffs' verdict, the first verdict awarding substantial monetary damages since the passage of the Private Securities Litigation Act of 1995.



# Timothy P. Briggs

an associate in the Haverford office, is admitted to practice before the Supreme Court of Pennsylvania. He is a graduate of the Temple University Beasley School of Law (J.D. 2005) and received his undergraduate degree in Political Science from West Chester University (B.A. 1992). Prior to joining the Firm, Mr. Briggs enjoyed a long and distinguished career in the political arena. Mr. Briggs had served in senior positions with U.S. Congressmen Joseph Hoeffel (PA) and Bill Pascrell (NJ) as well as Pennsylvania State Senator Connie Williams.



# Daniel J. Brown

an associate in the Wilmington Office, is admitted to practice before the Supreme Court of Delaware and the U.S. District Court for the District of Delaware. Mr. Brown received his J.D., *magna cum laude,* in 2005 from Widener University School of Law, where he served as an Articles Editor for the *Delaware Journal of Corporate Law*. While in law school, Mr. Brown was a recipient of the prestigious Wolcott Fellowship, in which he served as a law clerk for the Honorable Myron T. Steele, Chief Justice of the Delaware Supreme Court. Mr. Brown received his B.A. in Psychology from Villanova University in 2001.



## Fatema E.F. Burkey

an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey. She graduated from Washington University School of Law (J.D. 2003) and received her undergraduate degree in French and English from Georgetown University (B.S. 1998 *cum laude*). While in law school, Ms. Burkey served as Associate Editor of the *Washington University Law Quarterly* and authored, *Prosecutor v. Aleksovski: A Critical Analysis of the ICTY Appeals Chamber's Abandonment of Witness Protection Measures*, 82 Wash. U. L.Q. 297-318 (2004).



## Benjamin F. Johns

an associate in the Haverford office, is admitted to practice before the United States Court of Appeals for the Third Circuit, the District Court for the Eastern District of Pennsylvania, the District Court for the District of New Jersey, as well as the Supreme Courts of Pennsylvania and New Jersey. He is a graduate of the Penn State Dickinson School of Law (J.D. 2005), the Penn State Harrisburg School of Business Administration (M.B.A. 2004, Beta Gamma Sigma), and Washington and Lee University (B.S. 2002, *cum laude*). While attending law school, Mr. Johns was a member of the Woolsack Honor Society and Irving R. Kaufman Securities Moot Court Team. He is a member of the Philadelphia Bar Association and the Association of Trial Lawyers of America.



## Kimberly Litman Kimmel

an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey. She is a graduate of the Temple University Beasley School of Law (J.D. 2003) and received her undergraduate degree in Psychology from the University of Maryland at College Park (B.A. 2000). While in law school, she served as Executive Editor of the *Temple Political & Civil Rights Law Review* and as a law clerk to Senior District Judge Kenneth L. Ryskamp of the United States District Court for the Southern District of Florida. Ms. Litman's pro bono activities include serving as a volunteer attorney with the Philadelphia Volunteers for the Indigent Program, a non-profit organization that provides legal services to low-income clients who reside in Philadelphia or have legal problems in Philadelphia.



## Timothy N. Mathews

an associate in the Haverford office, is a graduate of Rutgers School of Law-Camden (J.D. 2003 *magna cum laude*) and Rutgers University-Camden (B.A. 2000 *summa cum laude*). While attending law school, Mr. Mathews was a Teaching Assistant for the Legal Research and Writing Program and received the 1L Legal Writing Award. He was also Lead Marketing Editor of the *Rutgers Journal of Law & Religion* and one of the top 10 oralists in the 2003 Judge John R. Brown Admiralty Moot Court competition. Mr. Mathews' practice includes the representation of investors in complex antitrust, securities, and shareholder derivative litigation. He is an active member of the Firm's litigation team in *In re Mutual Funds Investment Litigation* (MDL 04-1586), a multidistrict litigation alleging claims related to late trading and market timing of mutual funds in eighteen mutual fund families and involving hundreds of parties. Mr. Mathews is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, and the United States District Court for the Eastern District of Pennsylvania.



## Mary Katherine Meermans

an associate in the Haverford office, graduated *cum laude* from the Law School of University of Pennsylvania in 1982. She served as a law clerk to the Honorable Paul M. Chalfin, Philadelphia Court of Common Pleas, from September 1982 to January 1984, and to the Honorable Phyllis W. Beck from January 1984 to October 1984. She is a member of the Pennsylvania Bar.



## A. Zachary Naylor

an associate in the Wilmington office, is a graduate of the Widener University School of Law (J.D., 2003 *magna cum laude*), the University of Delaware (B.A. in Economics and Political Science, 2000) and Salesianum School. While at Widener, he served as Wolcott Law Clerk to the Honorable Joseph T. Walsh of the Supreme Court of Delaware. He was also a Managing Editor of the *Delaware Journal of Corporate Law*, meriting the Russell R. Levin Memorial Award for outstanding service and dedication to that publication. Mr. Naylor is admitted to practice before the Supreme Court of Delaware, the United States District Court for the District of Delaware and the United States Court of Appeals for the Third Circuit.

Together with the Firm's Partners, Mr. Naylor has assisted in the prosecution of numerous shareholder and unitholder class and derivative actions arising pursuant to Delaware law, including;

- *In re Freeport McMoRan Sulphur Inc. Shareholder Litigation*, C.A. No. 16729-NC (Del. Ch.) This Action challenged the fairness of the terms and process of a 1998 merger between Freeport-McMoRan Sulphur Inc. and McMoRan Oil & Gas, Co. *See e.g.* 2005 WL 1653923 (Del. Ch. June 30, 2005) and 2005 WL 225040 (Del. Ch. Jan. 26, 2005). A settlement providing for a $17.5 million fund for the Class was approved by the Court of Chancery on April 20, 2006.

*A. Zachary Naylor, cont.*

- *IG Holdings, Inc. et.al. v. Hallwood Realty, LLC*, C.A. No. 20283-NC (Del. Ch.) This Action challenged the response of a Partnership's general partner to a tender offer and the eventual allocation of merger consideration between the general partner and limited partners. Ultimately, as a result of the litigation, the limited partners received a premium price for their units, protected by a floor.

- *Saito, et.al. v. McCall, et.al.,* C.A. No. 17132-NC (Del. Ch.) This Action involved derivative litigation on behalf of McKesson HBOC arising from alleged oversight violations by certain board members. The Court approved a settlement including a $30 million fund for the Company's behalf, mechanisms to protect the independent prosecution of certain realigned claims, and other corporate governance benefits. The settlement represents a historically large achievement for cases of this type and was characterized by the Court of Chancery as "strikingly good" particularly in light of the "onerous path" presented by Delaware law for derivative Plaintiffs.

- *In re Chiron Shareholder Deal Litigation*, Consol. Case No. RG05-230567 (Cal). & *In re Chiron Corporation Shareholder Litigation*, C.A. No. 1602-N (Del. Ch.) These Actions sought to enjoin the proposed acquisition of shares of Chiron Corporation not already held by its 42% stockholder, Novartis AG. The Actions also sought to invalidate certain contractual provisions that effectively prevent Chiron board members from effectively discharging their unremitting fiduciary duties in accordance with Delaware law. Following briefing on a motion for preliminary injunction, a settlement was reached pursuant to which Novartis increased the offered merger consideration by $330 million.

- *Gelfman et.al. v. Weeden Investors, L.P., et.al., C.A. No. 18519 (Del. Ch.)* This Action alleged that the corporate general partner (and its board of directors) of a limited partnership violated contractual and fiduciary duties owed to limited partners. Following a trial on the merits, Plaintiffs prevailed on a substantial portion of their claims resulting in a judgment in favor of Plaintiffs. *See e.g.* 859 A.2d 89 (Del. 2004).



# Joseph G. Sauder

an associate in the Haverford office, has concentrated his practice on prosecuting class action litigation, including securities fraud, shareholder derivative actions, consumer protection, ERISA and antitrust cases on behalf of shareholders, consumers and institutional clients. Prior to joining the firm, Mr. Sauder was an associate with a major Philadelphia firm where he concentrated on complex civil litigation. From 1998 to 2003, Mr. Sauder was a prosecutor in the Philadelphia District Attorney's Office where he served as lead counsel in hundreds of criminal trials including over twenty jury trials involving major felonies.

Mr. Sauder received his Bachelor of Science, *magna cum laude* in Finance from Temple University in 1995. He graduated from Temple University School of Law in 1998, where he was a member of *Temple Law Review*.

Mr. Sauder's public service activities include teaching trial advocacy to a local Philadelphia high school team which competed in the State Mock Trial Competition. He is vice president of the Philadelphia District Attorneys' Alumni Association. His *pro bono* activities include serving as a volunteer attorney with the Support Center for Child Advocates, a nonprofit organization that provides legal and social services to abused and neglected children.

Mr. Sauder is a member of the Firm's Client Development Group and works closely with the Firm's institutional clients. He is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States Court of Appeals for the Third Circuit, the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania and the District of New Jersey.

Together with the Firm's Partners, Mr. Sauder has assisted or is assisting in the prosecution of the following actions:

- *Charles v. Pepco Holdings Inc*, No. 05-702 (D.Del) This pending ERISA class action lawsuit filed in September 2005 on behalf of a Class consisting of employees who may suffer significantly reduced future benefit accruals as a result of the company converting their pension rights to the Cash Balance Sub-Plan of the Conectiv Retirement Plan.

*Joseph G. Sauder cont.*

- *In re Textainer Financial Services Corporation, et al.,* Superior Court of California, County of San Francisco. This pending securities class action filed in 2005 arises out of proxy solicitations that were made to holders of limited partnership units issued by the Textainer Partnerships, a California Limited Partnership. The Complaint alleges that the defendants breached their fiduciary duties by approving a sale of the assets that provided the Limited Partners with inadequate consideration and by disseminating a misleading Proxy on which the Limited Partners were asked to cast their vote on the sale. In early 2006 the court denied the defendants' demurrer and certified the class.

- *DeBenedictis v. Merrill Lynch & Co., Inc.,* No. 04-404 (D. N.J.) This pending class action challenges the sufficiency of Merrill Lynch's prospectus disclosures for Class B shares in its proprietary mutual funds.

- *In Re: Canadian Import Antitrust Litigation*, No. 04-2724 (D. Minn.) This pending antitrust class action is based on allegations that nine pharmaceutical companies have conspired to prevent U.S. consumers from buying prescription drugs from Canada, creating high drug prices in the United States. The case is currently on appeal in the Eighth Circuit.

- *Cook v. Rockwell International and the Dow Chemical Company*, No. 90-cv-00181 (D. Co.) Mr. Sauder assisted with the trial of this environmental case involving the Rocky Flats Nuclear Weapons Plant. The case sought property damages (compensatory and punitive) for a class of approximately 15,000 persons owning parcels downwind of Rocky Flats, which is located about 16 miles northwest of downtown Denver, Colorado. In February 2006 a jury returned a verdict of $554 million on behalf the Class. It includes an award of $200 million in punitive damages.

- *Saito v. McCall*, No. Civ. A. 17132-NC (Del. Ch.) This derivative action is based on allegations that the officers, directors and advisors of two companies, McKesson and HBOC Inc. were aware of material accounting improprieties at HBOC Inc. previous to a merger of McKesson and HBOC Inc. On February 21, 2006, the Court of Chancery approved a settlement in which the Individual Defendants' insurers will pay $30 million to the Company.

- *In re DVI Securities Litigation*, No. 2:03-CV-5336 (E.D. Pa.) This pending securities class action was brought on behalf of purchasers of DVI Securities. Plaintiffs' allege that DVI's financial reports violated generally accepted accounting principles by engaging in various deceptive schemes.

Mr. Sauder also assists in the prosecution of actions involving health and welfare issues, including actions to recover excessive charges due to fraud and other misconduct by health service providers, and antitrust claims to recover excessive prescription drug charges and other costs due to corporate collusion and misconduct.



# Daniel B. Scott

an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States Court of Appeals for the Third Circuit and the United States District Courts for the District of New Jersey, Eastern District of Pennsylvania and Eastern District of Michigan. He is a graduate of Emory University School of Law (J.D. 2001, Atlanta Law Fellow) and Pennsylvania State University (B.S. Economics 1991, *with Distinction*, University Scholar). Upon graduation from law school, Mr. Scott was inducted into the Order of Barristers and Order of Emory Advocates, in recognition of his work as a participant and coach on the Emory Law School Philip C. Jessup International Law Moot Court team (1999-2001).

His practice includes the representation of companies, investors and consumers in complex antitrust, securities and consumer protection litigation. In *In re Pennsylvania Baycol Third Party Payor Litigation* (Phila. Ct. Common Pleas), a class action for which Chimicles & Tikellis served as co-lead counsel, Mr. Scott was instrumental in helping obtain partial summary judgment on liability; this was the first judgment to be entered against Bayer in the United States in connection with the withdrawal of Baycol. Mr. Scott also materially assisted in briefing a motion for class certification in that case, resulting in the certification of one of the few national class actions involving third party payors to be certified in a state court. Shortly before trial, the firm reached a settlement with Bayer in which Bayer agreed to pay class members a net recovery that approximates their maximum damages. In *Wong v. T-Mobile USA, Inc.* (E.D. Mich. 2006), a class action for which Chimicles & Tikellis serves as co-lead counsel, Mr. Scott was instrumental in briefing opposition to T-Mobile's motion to compel arbitration. In July 2006, the Court issued an opinion denying T-Mobile's motion, having concluding that the class action waiver contained therein was unenforceable. Mr. Scott's *pro bono* commitments include an effort to obtain asylum for a Colombian bacteriologist who was kidnapped, assaulted and threatened with death by the FARC rebels of Colombia. In this case, Mr. Scott argued and won remand from the Court of Appeals for the Third Circuit on a denial of asylum by the Department of Homeland Security. *Rojas-Contreras v. Att'y Gen'l-,* No. 04-4762, 2006 WL 2052233 (3d Cir. July 24, 2006).

In September 2006, American Lawyer Media, publisher of *The Legal Intelligencer* and the *Pennsylvania Law Weekly*, named Mr. Scott as one of forty-five "Lawyers on the Fast Track" – Pennsylvania attorneys under the age of 40 who show outstanding promise in the legal profession and make a significant commitment to their community. Selection for this award is done by an independent ALM committee comprised of members of the bar.

### *Health & Welfare Fund Assets*

*C&T Protects Clients' Health & Welfare Fund Assets Through Monitoring Services & Vigorously Pursuing Health & Welfare Litigation.*

At no cost to the client, C&T seeks to protect its clients' health & welfare fund assets against fraud and other wrongdoing by monitoring the health & welfare fund's drug purchases, Pharmacy benefit Managers and other health service providers. In addition, C&T investigates potential claims and, on a fully-contingent basis, pursues legal action for the client on meritorious claims involving the clients' heath & welfare funds. These claims could include: the recovery of excessive charges due to misconduct by health service providers; antitrust claims to recover excessive prescription drug charges and other costs due to corporate collusion and misconduct; and, cost-recovery claims where welfare funds have paid for health care treatment resulting from defective or dangerous drugs or medical devices.

### *Monitoring Financial Investments*

*C&T Protects Clients' Financial Investments Through Securities Fraud Monitoring Services.*

Backed by extensive experience, knowledge of the law and successes in this field, C&T utilizes various information systems and resources (including forensic accountants, financial analysts, seasoned investigators, as well as technology and data collection specialists, who can cut to the core of complex financial and commercial documents and transactions) to provide our institutional clients with a means to actively protect the assets in their equity portfolios. As part of this no-cost service, for each equity portfolio, C&T monitors relevant financial and market data, pricing, trading, news and the portfolio's losses. C&T investigates and evaluates potential securities fraud claims and, after full consultation with the client and at the client's direction, C&T will, on a fully-contingent basis, pursue legal action for the client on meritorious securities fraud claims.

### *Corporate Transactional*

*C&T Protects Shareholders' Interest by Holding Directors Accountable for Breaches of Fiduciary Duties*

Directors and officers of corporations are obligated by law to exercise good faith, loyalty, due care and complete candor in managing the business of the corporation. Their duty of loyalty to the corporation and its shareholders requires that they act in the best interests of the corporation at all times. Directors who breach any of these "fiduciary" duties are accountable to the stockholders and to the corporation itself for the harm caused by the breach. A substantial part of the practice of Chimicles & Tikellis LLP involves representing shareholders in bringing suits for breach of fiduciary duty by corporate directors.

# Practice Areas

***Securities Fraud***

*C&T Protects and Recovers Clients' Assets Through the Vigorous Pursuit of Securities Fraud Litigation.*

C&T has been responsible for recovering over $1 billion for institutional and individual investors who have been victims of securities fraud. The prosecution of securities fraud often involves allegations that a publicly traded corporation and its affiliates and/or agents disseminated materially false and misleading statements to investors about the company's financial condition, thereby artificially inflating the price of that stock. Often, once the truth is revealed, those who invested at a time when the company's stock was artificially inflated incur a significant drop in the value of their stock. C&T's securities practice group comprises seasoned attorneys with extensive trial experience who have successfully litigated cases against some of the nation's largest corporations. This group is strengthened by its use of forensic accountants, financial analysts, and seasoned investigators.

***Antitrust***

*C&T Enforces Clients' Rights Against Those Who Violated Antitrust Laws.*

C&T successfully prosecutes an array of anticompetitive conduct, including price fixing, tying agreements, illegal boycotts and monopolization. As counsel in major litigation over anticompetitive conduct by the makers of brand-name prescription drugs, C&T has helped clients recover significant amounts of price overcharges for blockbuster drugs such as BuSpar, Coumadin, Cardizem, Relafen, and Paxil.

***Real Estate Investment Trusts***

*C&T is a Trail Blazer in Protecting Clients' Investments in Non-Listed Equities.*

C&T represents limited partners and purchaser of stock in limited partnerships and real estate investment trusts (non-listed REITs) which are publicly-registered but not traded on a national stock exchange. These entities operate outside the realm of a public market that responds to market conditions and analysts' scrutiny, so the investors must rely entirely on the accuracy and completeness of the financial and other disclosures provided by the company about its business, its finances, and the value of its securities. C&T prosecutes: (a) securities law violations in the sale of the units or stock; (b) abusive management practices including self-dealing transactions and the payment of excessive fees; (c) unfair transactions involving sales of the entities' assets; and (d) buy-outs of the investors' interests.

***Shareholder Derivative Lawsuits***

*C&T is a Leading Advocate for Prosecuting and Protecting Shareholder Rights through Derivative Lawsuits and Class Actions.*

C&T is at the forefront of persuading courts to recognize that actions taken by directors (or other fiduciaries) of corporations or associations must be in the best interests of the shareholders. Such persons have duties to the investors (and the corporation) to act in good faith and with loyalty, due care and complete candor. Where there is an indication that a director's actions are influenced by self-interest or considerations other than what is best for the shareholders, the director lacks the independence required of a fiduciary and, as a consequence, that director's decisions cannot be honored. A landmark decision by the Supreme Court of Delaware underscored the sanctity of this principal and represented a major victory for C&T's clients.

***Corporate Governance and Accountability***

*C&T is a Principal Advocate for Sound Corporate Governance and Accountability.*

C&T supports the critical role its investor clients serve as shareholders of publicly held companies. Settlements do not provide exclusively monetary benefits to our clients. In certain instances, they may include long term reforms by a corporate entity for the purpose of advancing the interests of the shareholders and protecting them from future wrongdoing by corporate officers and directors. On behalf of our clients, we take corporate directors' obligations seriously. It's a matter of justice. That's why C&T strives not to only obtain maximum financial recoveries, but also to effect fundamental changes in the way companies operate so that wrongdoing will not reoccur.

***CNL Hotels & Resorts Inc. Securities Litigation*, Case No. 6:04-CV-1231(M.D. FL).**

C&T is Lead Litigation Counsel in CNL Hotels & Resorts Inc. Securities Litigation**,** representing a Michigan Retirement System, other named plaintiffs and over 100,000 investors in this federal securities law class action that was filed in August 2004 against the nation's second largest hotel real estate investment trust, CNL Hotels, and certain of its affiliates, officers and directors. CNL raised over $3 billion from investors pursuant to what Plaintiffs alleged to be false and misleading offering materials. In addition, in June 2004 CNL proposed an affiliated-transaction that was set to cost the investors and the Company over $300 million ("Merger").

On August 1, 2006, the Federal District Court located in Orlando, Florida granted final approval of the Settlement as fair, reasonable, and adequate, and in rendering its approval of an award of attorneys' fees and costs to Plaintiffs' Counsel, the Court noted that "Plaintiffs' counsel pursued this complex case diligently, competently and professionally" and "achieved a successful result." More than 100,000 class members received notice of the proposed settlement and no substantive objection to the settlement, plan of allocation or fee petition was voiced by any class member.

The Settlement resolves federal securities law and state law claims that were filed against CNL Hotels & Resorts, Inc. (f/k/a CNL Hospitality Properties, Inc.)("CNL Hotels") and other individual and entity defendants ("Settling Defendants") in August, 2004. The Action was filed on behalf of: (a) CNL Hotels shareholders entitled to vote on the proposals presented in CNL Hotels' proxy statement dated June 21, 2004 ("Proxy Class"); and (b) CNL Hotels' shareholders who acquired CNL Hotels shares pursuant to or by means of CNL Hotels' public offerings, registration statements and/or prospectuses between August 16, 2001 and August 16, 2004 ("Purchaser Class").

The Proxy Class claims were settled by (a) CNL Hotels having entered into an Amended Merger Agreement which significantly reduced the amount that CNL Hotels paid to acquire its Advisor, CNL Hospitality Corp., compared to the Original Merger Agreement approved by CNL Hotels' stockholders pursuant to the June 2004 Proxy; (b) CNL Hotels having entered into certain Advisor Fee Reduction Agreements, which significantly reduced certain historic, current, and future advisory fees that CNL Hotels paid its Advisor before the Merger; and (c) the adoption of certain corporate governance provisions by CNL Hotels' Board of Directors. **In approving the Settlement, the Court concluded that in settling the Proxy claims, "a substantial benefit [was] achieved (estimated at approximately**

**$225,000,000)" and "this lawsuit was clearly instrumental in achieving that result."** The Purchaser Class claims were settled by Settling Defendants' payment of **$35,000,000**, payable in three annual installments (January 2007 to January 2009).

This is an excellent result in a litigation that presented extremely difficult and complex issues. The Settlement achieves outstanding benefits for CNL Hotels' investors and, importantly, the Company is now well-positioned to pursue its business plan

***In Re Chiron Shareholder Deal Litigation*, Case No. RG05-230567 (Cal. Super.) & *In re Chiron Corporation Shareholder Litigation*, C.A. No. 1602-N (Del. Ch.).**

C&T represents stockholders of Chiron Corporation in an action which challenged the proposed acquisition of Chiron Corporation by its 42% stockholder, Novartis AG. Novartis announced a $40 per share merger proposal on September 1, 2005, which was rejected by Chiron on September 5, 2005. On October 31, Chiron announced an agreement to merge with Novartis at a price of $45 per share. C&T was co-lead counsel in the consolidated action brought in the Delaware Court of Chancery. Other similar actions were brought by other Chiron shareholders in the Superior Court of California, Alameda City. The claims in the Delaware and California actions were prosecuted jointly in the Superior Court of California. C&T, together with the other counsel for the stockholders, obtained an order from the California Court granting expedited proceedings in connection with a motion preliminary to enjoin the proposed merger. Following extensive expedited discovery in March and April, 2006, and briefing on the stockholders' motion for injunctive relief, and just days prior to the scheduled hearing on the motion for injunctive relief, C&T, together with Co-lead counsel in the California actions, negotiated an agreement to settle the claims which included, among other things, a further increase in the merger price to $48 per share, or an additional $330 million for the public stockholders of Chiron. On July 25, 2006, the Superior Court of California, Alameda County, granted final approval to the settlement of the litigation.

***Rojas-Contreras v. Att'y Gen'l,* No. 04-4762, 2006 WL 2052233 (3d Cir. July 24, 2006)**.

In this pro bono matter, one of C&T's Associates represented a Colombian bacteriologist who was kidnapped, assaulted and threatened with death by the FARC rebels of Colombia, who thereafter sought asylum in the United States. The Department of Homeland Security denied asylum to the bacteriologist, and C&T represented her in the appeal of that denial. Subsequent to an oral argument before the Court of Appeals for the Third Circuit, C&T won remand on the denial of asylum.

***In Re: Pennsylvania Baycol: Third-Party Payor Litigation*, Case No. 001874, Court of Common Pleas, Philadelphia County**.

In connection with the withdrawal by Bayer of its anti-cholesterol drug Baycol, C&T represents various Health and Welfare Funds, including the Pennsylvania Employees Benefit Trust Fund, and a certified national class of "third party payors" seeking damages for the sums paid to purchase Baycol for their members/insureds and to pay for the costs of switching their members/insureds from Baycol to an another cholesterol-lowering drug. The Philadelphia Court of Common Pleas granted plaintiffs' motion for summary judgment as to liability; this is the first and only judgment that has been entered against Bayer anywhere in the United States in connection with the withdrawal of Baycol. The Court subsequently certified a national class, and the parties reached a settlement (recently approved by the court) in which Bayer agreed to pay class members a net recovery that approximates the maximum damages (including pre-judgment interest) suffered by class members. The class settlement negotiated by C&T represents a net recovery for third party payors that is between double and triple the net recovery pursuant to a non-litigated settlement negotiated by lawyers representing third party payors such as AETNA and CIGNA that was made available to and accepted by numerous other third party payors (including the TRS). C&T had advised its clients to reject that offer and remain in the now settled class action. On June 15, 2006 the court granted final approval of the settlement.

***In re Freeport-McMoran Sulphur, Inc. Shareholder Litigation*, C.A. No. 16729 (Del. Ch.).**

In this shareholder class action, C&T serves as Lead Plaintiffs' Counsel representing investors in a stock-for-stock merger of two widely held public companies, seeking to remedy the inadequate consideration the stockholders of Sulphur received as part of the merger. In June 2005, the Court of Chancery denied defendants' motions for summary judgment, allowing Plaintiffs to try each and every breach of fiduciary duty claim asserted in the Action. In denying defendants' motions for summary judgment the Court held there were material issues of fact regarding certain board member's control over the Board including the Special Committee members and the fairness of the process employed by the Special Committee implicating the duty of entire fairness and raising issues regarding the validity of the Board action authorizing the merger. The decision has broken new ground in the field of corporate litigation in Delaware. Before the trial commenced, Plaintiffs and Defendants agreed in principle to settle the case. The settlement, which was approved in April 2006, provides for a cash fund of $17,500,000.

***In re McKesson Derivative Litigation, Saito*, et. al. v. McCall, et. al., C.A. No. 17132 (Del. Ch.).**

As Lead Counsel in this stockholder derivative action, C&T challenged the actions of the officers, directors and advisors of McKesson and HBOC in proceeding with the merger of the two companies when their managements were allegedly aware of material accounting improprieties at HBOC. In addition, C&T also brought (under Section 220 of the Delaware Code) a books and records case to discover information about the underlying events. C&T successfully argued in the Delaware Courts for the production of the company's books and records which were used in the preparation of an amended derivative complaint in the derivative case against McKesson and its directors. Seminal opinions have issued from both the Delaware Supreme Court and Chancery Court about Section 220 actions and derivative suits as a result of this lawsuit. Plaintiffs agreed to a settlement of the derivative litigation subject to approval by the Delaware Court of Chancery, pursuant to which the Individual Defendants' insurers will pay $30,000,000 to the Company. In addition, a claims committee comprised of independent directors has been established to prosecute certain of Plaintiffs' claims that will not be released in connection with the proposed settlement. Further, the Company will maintain important governance provisions among other things ensuring the independence of the Board of Directors from management. On February 21, 2006, the Court of Chancery approved the Settlement and signed the Final Judgment and Order and Realignment Order.

***Shared Medical Systems 1998 Incentive Compensation Plan Litigation*, Philadelphia County Court of Common Pleas, Commerce Program, No. 0885.**

Chimicles & Tikellis LLP is lead counsel in this action brought in 2003 in the Philadelphia County Court of Common Pleas. The case was brought on behalf of approximately 1,300 persons who were employees of Defendant Siemens Medical Solutions Health Services Corporation (formerly Shared Medical Systems, Inc.) who had their 1998 incentive compensation plan ("ICP") compensation reduced 30% even though the employees had completed their performance under the 1998 ICP contracts and had earned their incentive compensation based on the targets, goals and quotas in the ICPs. The Court had scheduled trial to begin on February 4, 2005. On the eve of trial, the Court granted Plaintiffs' motion for summary judgment as to liability on their breach of contract claim. With the rendering of that summary judgment opinion on liability in favor of Plantiffs, the parties reached a settlement in which class members will receive a **net recovery of the full amount of the amount that their 1998 ICP compensation was reduced**. On May 5, 2005, the Court approved the settlement, stating that the case "should restore anyone's faith in class actions as a reasonable way of proceeding on reasonable cases."

***Gelfman v. Weeden Investors, L.P.,* Civ. Action No. 18519-NC (Delaware Chancery Court).**

Chimicles & Tikellis LLP served as class counsel, along with other plaintiffs' firms, in this action against the Weeden Partnership, its General Partner and various individual defendants filed in the Court of Chancery in the State of Delaware. In this Class Action, Plaintiffs alleged that Defendants breached their fiduciary duties to the investors and breached the Partnership Agreement. The Delaware Chancery Court conducted a trial in this action which was concluded in December 2003. Following the trial, the Chancery Court received extensive briefing from the parties and heard oral argument. On June 14, 2004, the Chancery Court issued a memorandum opinion, which was subsequently modified, finding that the Defendants breached their fiduciary duties and the terms of the Partnership Agreement, with respect to the investors, and that Defendants acted in bad faith ("Opinion"). This Opinion from the Chancery Court directed an award of damages to the classes of investors, in addition to other relief. In July 2004, Class Counsel determined that it was in the best interests of the investors to settle the Action for over 90% of the value of the monetary award under the Opinion (over $8 million).

***McParland v. Keystone Health Plan Central*, Case No. 98-SU-00770-01 (Pennsylvania Court of Common Pleas, York County).**

Chimicles & Tikellis LLP served as lead counsel in this class action, filed in 1998 in the Court of Common Pleas of York County on behalf of persons who enrolled in Keystone's medicare HMO "SeniorBlue" program based on Keystone's aggressive marketing of prescription coverage, low premiums, and its affiliation with Blue Cross and Blue Shield. The suit asserted claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law and for breach of contract. In July 2004, the Court approved the settlement of this Action providing some class members with case and others with discounts on prescription drugs.

***I.G. Holdings Inc., et. al. v. Hallwood Realty, LLC*, et. al., C.A. No. 20283 (Del. Ch.).**

In the Delaware Court of Chancery, C& T represented the public unitholders of Hallwood Realty L.P. The action challenged the general partner's refusal to redeem the Partnership's rights plan or to sell the Partnership to maximize value for the public unitholders. Prior to the filing of the action, the Partnership paid no distributions and Units of the Partnership normally traded in the range of $65 to $85 per unit. The prosecution of the action by C&T caused the sale of the Partnership, ultimately yielding approximately <u>$137 per Unit</u> for the unitholders plus payment of the attorneys' fees of the Class.

***ML-Lee Litigation, ML Lee Acquisition Fund L.P.* and *ML-Lee Acquisition Fund II L.P.* and *ML-Lee Acquisition Fund (Retirement Accounts)*, (C.A. Nos. 92-60, 93-494, 94-422, and 95-724), Delaware Federal District Court.**

C&T represented three classes of investors who purchased units in two investment companies, ML-Lee Funds (that were jointly created by Merrill Lynch and Thomas H. Lee). The suits alleged breaches of the federal securities laws, based on the omission of material information and the inclusion of material misrepresentations in the written materials provided to the investors, as well as breaches of fiduciary duty and common law by the general partners in regard to conduct that benefited them at the expense of the limited partners. The complaint included claims under the often-ignored Investment Company Act of 1940, and the case witnessed numerous opinions that are considered seminal under the ICA. The six-year litigation resulted in **$32 million** in cash and other benefits to the investors.

***In re Real Estate Associates Limited Partnership Litigation*, Case No. CV 98-7035, United States District Court, Central District of California.**

Chimicles & Tikellis LLP achieved national recognition for obtaining, in a federal securities fraud action, the first successful plaintiffs' verdict under the PSLRA. Senior partner Nicholas E. Chimicles was Lead Trial Counsel in the six-week jury trial in federal court in Los Angeles, in October 2002. The jury verdict, in the amount of $185 million (half in compensatory damages; half in punitive damages), was ranked among the top 10 verdicts in the nation for 2002. After the court reduced the punitive damage award because it exceeded California statutory limits, the case settled for $83 million, representing full recovery for the losses of the class. At the final hearing, held in November 2003, the Court praised Counsel for achieving both a verdict and a settlement that "qualif[ied] as an exceptional result" in what the Judge regarded as "a very difficult case…" In addition, the Judge noted the case's "novelty and complexity…and the positive reaction of the class. Certainly, there have been no objections, and I think Plaintiffs' counsel has served the class very well."

***Case Summary:*** In August of 1998, over 17,000 investors ("Investor Class") in 8 public Real Estate Associates Limited Partnerships ("REAL Partnerships") were solicited by their corporate managing general partner, defendant National Partnership Investments Corp. ("NAPICO"), and other Defendants via Consent Solicitations filed with the Securities and Exchange Commission ("SEC"), to vote in favor of the sale of the REAL Partnerships' interests in 98 limited partnerships ("Local Partnerships"). In a self-dealing and interested transaction, the Investor Class was asked to consent to the sale of these interests to NAPICO's affiliates ("REIT Transaction"). In short, Plaintiffs alleged that defendants structured and carried out this wrongful and self-dealing transaction based on false and misleading statements, and omissions in the Consent Solicitations, resulting in the Investor Class receiving grossly

inadequate consideration for the sale of these interests. Plaintiffs' expert valued these interests to be worth a minimum of $86,523,500 (which does not include additional consideration owed to the Investor Class), for which the Investor Class was paid only $20,023,859.

Plaintiffs and the Certified Class asserted claims under Section 14 of the Securities Exchange Act of 1934 ("the Exchange Act"), alleging that the defendants caused the Consent Solicitations to contain false or misleading statements of material fact and omissions of material fact that made the statements false or misleading. In addition, Plaintiffs asserted that Defendants breached their fiduciary duties by using their positions of trust and authority for personal gain at the expense of the Limited Partners. Moreover, Plaintiffs sought equitable relief for the Limited Partners including, among other things, an injunction under Section 14 of the Exchange Act for violation of the "anti-bundling rules" of the SEC, a declaratory judgment decreeing that defendants were not entitled to indemnification from the REAL Partnerships.

***Trial:*** This landmark case is the <u>first</u> Section 14 – proxy law- securities class action seeking damages, a significant monetary recovery, for investors that has been tried, and ultimately won, before a jury anywhere in the United States since the enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Trial began on October 8, 2002 before a federal court jury in Los Angeles. The jury heard testimony from over 25 witnesses, and trial counsel moved into evidence approximately 4,810 exhibits; out of those 4,810 exhibits, witnesses were questioned about, or referred to, approximately 180 exhibits.

On November 15, 2002, the ten-member jury, after more than four weeks of trial and six days of deliberation, unanimously found that Defendants knowingly violated the federal proxy laws and that NAPICO breached its fiduciary duties, and that such breach was committed with oppression, fraud and malice. The jury's unanimous verdict held defendants liable for compensatory damages of $92.5 million in favor of the Investor Class. On November 19, 2002, a second phase of the trial was held to determine the amount of punitive damages to be assessed against NAPICO. The jury returned a verdict of $92.5 million in punitive damages. In total, trial counsel secured a unanimous jury verdict of $185 million on behalf of the Investor Class.

With this victory, Mr. Chimicles and the trial team secured the 10th largest verdict of 2002. (See, National Law Journal, "The Largest Verdicts of 2002", February 2, 3003; National Law Journal, "Jury Room Rage", Feb. 3. 2002). Subsequent to post-trial briefing and rulings, in which the court reduced the punitive damage award because it exceeded California statutory
limits, the case settled for $83 million. The settlement represented full recovery for the losses of the class.

***Prosecuting and trying this Case required dedication, tenacity, and skill:*** This case involved an extremely complex transaction. As Lead Trial Counsel, C&T

was faced with having to comprehensively and in an understandable way present complex law, facts, evidence and testimony to the jury, without having them become lost (and thus, indifferent and inattentive) in a myriad of complex terms, concepts, facts and law. The trial evidence in this case originated almost exclusively from the documents and testimony of Defendants and their agents. As Lead Trial Counsel, C&T was able, through strategic cross-examination of expert witnesses, to effectively stonewall defendants' damage analysis. In addition, C&T conducted thoughtful and strategic examination of defendants' witnesses, using defendants' own documents to belie their testimony.

***The significance of the case:*** The significance of this trial and the result are magnified by the public justice served via this trial and the novelty of issues tried. This case involved a paradigm of corporate greed, and C&T sent a message to not only the Defendants in this Action, but to all corporate fiduciaries, officers, directors and partners, that it does not pay to steal, lie and cheat. There needs to be effective deterrents, so that "corporate greed" does not pay. The diligent and unrelenting prosecution and trial of this case by C&T sent that message.

Moreover, the issues involved were novel and invoked the application of developing case law that is not always uniformly applied by the federal circuit courts. In Count I, Plaintiffs alleged that defendants violated § 14 of the Exchange Act. Subsequent to the enactment of the PLSRA, the primary relief sought and accorded for violations of the proxy laws is a preliminary injunction. Here, the consummation of the REIT Transaction foreclosed that form of relief. Instead, Plaintiffs' Counsel sought significant monetary damages for the Investor Class on account of defendants' violations of the federal proxy laws. C&T prevailed in overcoming defendants' characterization of the measure of damages that the Investor Class was required to prove (defendants argued for a measure of damages equivalent to the difference in the value of the security prior to and subsequent to the dissemination of the Consent Solicitations), and instead, successfully recouped damages for the value of the interests and assets given up by the Investor Class. The case is important in the area of enforcement of fiduciary duties in public partnerships which are a fertile ground for unscrupulous general partners to cheat the public investors.

Because of C&T's leadership and extensive advocacy skills, a complex case, requiring thousands of hours of attorney, expert, paralegal and support staff labor, which faced fierce opposition at each turn, was fully litigated and tried to a jury. Because of C&T, 17,000 investors had their day in court and were heard. C&T brought this Action before the revelations about the extensiveness of "corporate wrongdoing," and at the time this Action was filed, C&T already recognized the need for a clear message to be sent to corporations, and to the decision makers running those corporations, that wrongdoing will not be tolerated and will not pay.

# EXHIBIT C

SARRAF GENTILE LLP
ATTORNEYS AT LAW

485 Seventh Avenue • New York, New York 10018 • T 212.868.3610 • F 212.918.7967
www.sarrafgentile.com

**FIRM BIOGRAPHY**

SARRAF GENTILE LLP practices in a wide variety of litigation, with an emphasis on class, derivative and other complex multi-party actions. The firm is devoted to protecting the interests of businesses, investors and consumers that have been defrauded. The firm's practice involves securities, labor and antitrust laws, consumer fraud statutes, product liability claims and corporate governance matters. The firm maintains offices in New York City.

The cases in which the firm is or has been involved include:

• *Stevens v. GlobeTel Communications Corp.*, where the firm is Co-Lead Counsel for Plaintiffs in an action against GlobeTel and various insiders for violations of the Exchange Act of 1934;

• *In re Arbinet-Thexchange, Inc. Securities Litigation,* where the firm is Co-Lead Counsel for Plaintiffs in an action against Arbinet and various insiders for violations of the Securities Act of 1933;

• *Schottenfeld Qualified Associates LP v. Workstream Inc, et al.*, where the firm is Co-Lead Counsel for Plaintiffs in an action against Workstream and various insiders for violations of the Exchange Act of 1934;

• *The Education Station Day Care Centers v. Yellow Book USA, Inc.*, where the firm represented advertisers in the Yellow Book telephone directory for deceptive practices and helped recover over $70 million;

• *In re RCN Corp. ERISA Litigation*, where the firm is Co-Lead Counsel representing plan participants in the RCN 401(k) plan for violations of ERISA;

• *In re Avery Dennison Corp. ERISA Litigation,* where the firm is Co-Lead Counsel representing plan participants in the Avery Dennison 401(k) plan for violations of ERISA;

• *In re Host America Corp. Derivative Litigation*, where the firm is Co-Lead Counsel for Plaintiffs in an action on behalf of Host America against its directors and officers for breaches of fiduciary duty;

• *James L. McDonough et al., v. Toys "R" Us - Delaware, Inc. d/b/a Babies "R" Us, Inc.*, where the firm represents plaintiffs in an action for violation of the federal antitrust laws;

• *In re Palm Treo 600 and 650 Litigation*, where the firm is a member of the Executive Committee for Plaintiffs for violations of California consumer protection laws;

• *In re Ferro Corp. ERISA Litigation*, where the firm is Co-Lead Counsel representing plan participants in the Ferro 401(k) plan for violations of ERISA;

• *Stone v. Chiquita Brands International, Inc. et al.*, where the firm represents purchasers of bananas for injury as a result of the improper price-fixing of bananas;

• *Nussbaum v. iMergent, Inc., et al.*, where the firm represents shareholders against iMergent Inc. and various insiders for violations of the Exchange Act of 1934;

• *In re Merck & Co., Inc. ERISA Litigation (Burtoft v. Merck & Co., Inc., et al.)*, where the firm represents plan participants of various Merck 401(k) plans for violations of ERISA;

• *Whalen v. Pfizer, Inc.*, where the firm represents consumers of Listerine for violations of New York consumer protection laws; and,

• *Galeno v. Blockbuster, Inc.*, where the firm represents rental customers of Blockbuster videos for violation of New York consumer protection laws.

## THE ATTORNEYS

RONEN SARRAF is a graduate of Brooklyn Law School, where he served as Managing Editor of the *Brooklyn Journal of International Law*. Mr. Sarraf was a member of the Moot Court Honor Society, where he received an award for competing in the BMI Entertainment and Communications National Moot Court Competition as well as for serving as team director for the Judge Duberstein National Bankruptcy Moot Court Competition. While in law school, Mr. Sarraf clerked for the Honorable Richard F. Braun, New York State Supreme Court, and was a research assistant to former SEC commissioner, Roberta S. Karmel. He is the author of "The Value of Borrowed Art," published in the *Brooklyn Journal of International Law* and an article entitled "Authors' Lawsuit Takes Giant Leap Forward," published in the *Authors Guild Bulletin*. Mr. Sarraf earned a B.A. from Queens College and graduated with Departmental Honors in History.

Mr. Sarraf has been actively litigating securities, corporate and complex commercial class actions for his entire legal career. Among the numerous cases in which he's been involved, Mr. Sarraf actively participated in the following:

- *In re European Rail Pass Antitrust Litigation*, where a global settlement was reached involving the price fixing of European rail passes;

- *In re Adelphia Communications Corp. Securities & Derivative Litigation*, where he represented individual shareholders against over fifty named defendants in one of the largest corporate frauds in U.S. history;

- *In re Warnaco Group Inc. Securities Litigation*, where the Second Circuit reversed a lower court's dismissal of the action and where plaintiffs ultimately reached a multi-million dollar settlement;

• *In re Nice Systems Ltd. Securities Litigation*, where the Third Circuit affirmed the lower court's $10 million settlement;

• *In re eBay, Inc., Shareholder Litigation,* where the Delaware Chancery Court upheld claims of corporate theft brought against corporate insiders and Goldman Sachs for "spinning" (*i.e.*, exchanging lucrative IPO allocations for prospective investment banking business);

• *Richardson v. Gray.*, a derivative shareholder suit which involved numerous appeals, a several week trial and the incarceration of a company insider; and,

• *Raffone v. First American Title Insurance Co.*, where purchasers of home title insurance were defrauded by having to pay higher than statutorily-mandated insurance fees.

Mr. Sarraf is a member of the Association of the Bar of the City of New York and the New York State Bar Association. He is admitted to practice in the States of New York and New Jersey, as well as the United States Courts of Appeal for the Second and Seventh Circuit, the District Courts for the Southern, Eastern and Western Districts of New York, the District of New Jersey, the Eastern District of Wisconsin, the District of Colorado, and the Eastern District of Michigan.

JOSEPH GENTILE is a graduate of Boston College Law School, where he clerked for the Honorable Reginald C. Lindsay of the United States District Court for the District of Massachusetts. Mr. Gentile was also an intern at the Major Crimes Bureau at the Queens County District Attorney's Office as well as an intern at Bronx Legal Services. Mr. Gentile earned a B.S. from Fordham University, where he participated in the Business School's Honors Program, and graduate Cum Laude.

Mr. Gentile has actively participated in numerous securities fraud actions, including actions on behalf of shareholders of Shell Royal Dutch and Sonus Networks. He also participated as part of the team representing WorldCom equity and debt holders.

Mr. Gentile is a member of the Association of the Bar of the City of New York and the American Bar Association. He is admitted to practice in the State of New York.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>MICHAEL J. LAROSA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE<br><br>Defendants.</td><td>CASE NO. 06-cv-06349-NRB</td></tr>
<tr><td>MOTTI KAPLAN, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE<br><br>Defendants.</td><td>CASE NO. 06-cv-06128-NRB</td></tr>
</table>

| | |
|---|---|
| SANTIAGO GUZMAN, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-06235 |
| ERIC S. BERGEN, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-06313 |
| ROBERT FEENY, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-06449 |

| | |
|---|---|
| FLOYD REYNOLDS, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-06693 |
| ANTHONY CAIAFA, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE and KATHRYN A. GAMBLE | CASE NO. 06-cv-07057 |
| ROBERT B, GRAY, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE | CASE NO. 06-cv-07162 |

**[PROPOSED] ORDER**

WHEREAS, Plaintiff Michael J. Larosa ("Plaintiff") and proposed Lead Plaintiff Jay M. Spritzler ("Spritzler") (collectively, "Movants") respectfully moved for an order for consolidation of the above captioned actions pursuant to Fed. R. Civ. P. 42(a); and

WHEREAS, Spritzler also moved for an order, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), to be appointed as Lead Plaintiff of the class of purchasers of the securities of Imax Corporation and for approval by the Court of Spritzler's selection of Chimicles & Tikellis LLP and Sarraf Gentile LLP as Co-Lead Counsel in the Consolidated Actions; and

WHEREAS, Spritzler and his counsel satisfy the relevant prerequisites under the PSLRA, Federal Rules of Civil Procedure 23 and 42, and other relevant authorities, and upon all prior proceedings and papers had herein, and good cause appearing therefor;

IT IS HEREBY ORDERED THAT the above captioned actions are consolidated and Spritzler is appointed Lead Plaintiff and his selection of Chimicles & Tikellis LLP and Sarraf Gentile LLP as Co-Lead Counsel is approved.

Dated: _________________, 2006

_________________________________
UNITED STATES DISTRICT JUDGE

**Certificate of Service**

The undersigned hereby certifies that on October 10, 2006, a true and correct copy of the foregoing (i) Notice of Motion and Motion for Consolidation, Appointment of Lead Plaintiff and Approval of Selection of Co-Lead Counsel, (ii) Memorandum of Law In Support of Motion for Consolidation, Appointment of Lead Plaintiff and Approval of Selection of Co-Lead Counsel, (iii) Declaration of Ronen Sarraf with attached exhibits, and (iv) [Proposed] Order, was filed electronically with the Court using the Court's ECF system which will automatically send notification to all parties who have requested such notification.

/s/ Ronen Sarraf